**APEX INVESTMENT ASSOCIATES, INC., an Illinois corporation, Plaintiff,**

v.

**TJX COMPANIES, INC., a Delaware corporation, Defendant.**

**No. 90 C 3460.**

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1990.

David R. Herzog, Steven Shamash, Layfer, Cohen & Handelsman, Ltd., Chicago, Ill., for plaintiff.

James I. Rubin, Bruce W. Melton, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Defendant has filed a motion to refer this case to the bankruptcy court.[1] In addition, defendant moves for an extension of time to respond to plaintiff's complaint. For the reasons stated herein, defendant's motion for referral to the bankruptcy court is granted. The court, however, declines to address defendant's motion for an extension of time to respond to the complaint; that motion shall be considered by the bankruptcy judge.

## FACTS

This dispute centers around a shopping center lease. The lease agreement was originally executed in 1971 by American National Bank and Trust Company of Chicago (as lessor) and Zayre of Illinois, Inc. (as lessee). In connection with the lease agreement, defendant The TJX Companies, Inc. ("TJX") agreed to guarantee the lessee's obligations.[2] As of June 30, 1980, plaintiff Apex Investment Associates, Inc. ("Apex") succeeded American National Bank as lessor, and TJX became the holder in interest of the lessee's rights.

In 1988, TJX sold its Zayre Stores Division to Ames Department Stores, Inc. ("Ames"). The assets purchased by Ames included TJX's interest in the lease. Under the terms of the acquisition agreement, Ames assumed "all liabilities, obligations, claims, costs and expenses" resulting from the "ownership, possession, use or operation" of the Zayre Stores Division. *See* Acquisition Agreement, ¶ 1.4(a); Instrument of Assumption of Liabilities. Ames also agreed to indemnify TJX for "any loss, liability, claim, damage or expense" arising from the liabilities and obligations assumed by Ames. Acquisition Agreement, ¶ 9.2.

Not long after the acquisition was completed, Ames began experiencing financial difficulties. On April 25, 1990, Ames commenced a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of New York. Due to its financial decline, Ames was unable to pay certain real estate taxes and common area maintenance fees that it owed under the lease.

Ames' default prompted Apex to seek payment from TJX, the guarantor of Ames' lease obligations. Apex sent two separate letters to TJX demanding payment for the real estate taxes and maintenance fees. When these written demands proved fruitless, Apex commenced this diversity action against TJX to enforce the guaranty agreement. TJX now moves to refer this action to the United States Bankruptcy Court for the Northern District of Illinois.

## DISCUSSION

■ Under 28 U.S.C. § 157(a), a district court may refer to the bankruptcy court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); *see also* Local Rule 2.33(a). Bankruptcy jurisdiction extends to cases "under title 11," core proceedings "arising under title 11," core proceedings "arising in a case under title 11," and noncore proceedings that are "related to a case under title 11." 28 U.S.C. §§ 157(b)(1), 157(c)(1). If the particular case or proceeding does not fall within one of these categories, it may not be referred to the bankruptcy court. *In re Peterson*, 104 B.R. 94, 96 (Bankr.E.D.Wis.1989).

■ In support of its motion for referral to the bankruptcy court, TJX contends that this diversity action is "related to" Ames' Chapter 11 bankruptcy proceeding. A civil action is "related to" the bankruptcy if it

---

1. On September 13, 1990, this court granted defendant's motion for referral to the bankruptcy court when plaintiff failed to appear in court to oppose the motion. Plaintiff now moves to vacate that order. Since plaintiff has contested the motion, and the issue is fully briefed, plaintiff's motion to vacate the September 13 order is granted.

2. The guaranty agreement provides that "Zayre Corp. hereby unconditionally, irrevocably and absolutely guarantees to Landlord, and its successors and assigns, the payment of the rents and other sums provided for in said lease to be paid by Tenant." (TJX was formerly known as Zayre Corp.)

"affects the amount of property available for distribution or the allocation of property among creditors." *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987); *see also Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 749 (7th Cir.1989). Applying the "relatedness" standard set forth by the Seventh Circuit in *Xonics,* this court agrees with TJX that the bankruptcy court has jurisdiction to hear this dispute. Apex's claim against TJX is clearly "related to" Ames' efforts at reorganization. If Apex is successful in enforcing the guaranty agreement against TJX, then TJX will simply seek indemnification from Ames, the debtor. By virtue of its agreement to indemnify TJX, Ames will have less assets available to satisfy the claims of other creditors—a result which unquestionably impacts upon the administration of the Ames' estate.

Several courts have held that bankruptcy jurisdiction encompasses civil actions between a creditor and a nondebtor guarantor of the debtor's obligations. *In re Brentano's, Inc.,* 27 B.R. 90, 91 (Bankr.S.D.N.Y. 1983), for example, involved a lease agreement between Pine Realty, Inc. (the lessor) and Brentano's, Inc. (the lessee).[3] A nondebtor, MacMillan, Inc., agreed to guarantee the lessee's obligations. When Brentano's filed a Chapter 11 bankruptcy petition, Pine Realty commenced an action in state court against MacMillan to enforce the guaranty agreement. *Id.* MacMillan moved to stay the state court proceeding, arguing that it was "related to" the Chapter 11 bankruptcy proceeding. The bankruptcy court agreed, and granted MacMillan's motion. *Id.* at 92. The court found

that the state court action was "related to" the bankruptcy case because MacMillan (the guarantor) was entitled to indemnification from Brentano's (the debtor).[4] *Id.* In light of the indemnification agreement between Brentano's and MacMillan, the court reasoned, the debtor's reorganization efforts would be affected if the lessor obtained a judgment against the guarantor. *Id.; see also In re Athos Steel and Aluminum, Inc.,* 71 B.R. 525, 536 (Bankr.E.D. Pa.1987); *In re Johnie T. Patton, Inc.,* 12 B.R. 470, 471 (Bankr.D.Nev.1981) ("There is no question that an action against guarantors of a debtor's obligation is 'related to' the debtor's case."); *In re Lucasa Int'l Ltd.,* 6 B.R. 717, 719 (Bankr.S.D.N.Y.1980); *In re Brothers Coal Co.,* 6 B.R. 567, 571 (Bankr.W.D.Va.1980).

The court in *Philippe v. Shape, Inc.,* 103 B.R. 355 (D.Me.1989) also reached the same conclusion. The plaintiff in that case filed a civil action against Shape, Inc. and two of its corporate officers and directors. *Id.* at 356. Subsequently, Shape commenced a Chapter 11 reorganization proceeding. The plaintiff then moved to refer his claims against the two individual defendants to the bankruptcy court. *Id.* Based on the debtor's duty to indemnify its corporate officers and directors, the court found that the civil action was "related to" the bankruptcy proceeding. *Id.* at 358. The court pointed out that if the plaintiff prevailed against the officers and directors, the debtor would be subject to indemnification liability. The obligation to indemnify these individuals "would necessarily affect the

---

**3.** The court in *Brentano's* addressed the "relatedness" issue in a slightly different context than is involved in the present case. The issue in that case was whether the bankruptcy court had jurisdiction over a civil action pursuant to 28 U.S.C. § 1471(b) (now found in 28 U.S.C. § 1334(b)). Under that provision, bankruptcy courts may exercise jurisdiction over "civil proceedings arising under title 11, or arising in or *related to* cases under title 11." (Emphasis added.) This case, on the other hand, involves 28 U.S.C. § 157(a), which authorizes the district court to refer a proceeding to the bankruptcy court if that proceeding is *"related to* a case under title 11." (Emphasis added.) The relevant language in § 1334 and § 157 is nearly

identical. Thus, for purposes of analysis, the *Brentano's* case may be considered on the question of "relatedness" under § 157. *See Philippe v. Shape, Inc.,* 103 B.R. 355, 357 n. 1 (D.Me. 1989).

**4.** On appeal, the district court set aside the stay imposed by the bankruptcy court. 36 B.R. 90, 92 (S.D.N.Y.1984). For purposes of that appeal, however, the district court assumed that the bankruptcy court had jurisdiction to enter the order staying the state court action. *Id.* at 91. Therefore, the district court did not address the issue of whether the state court action was "related to" the bankruptcy proceeding.

administration of the Shape bankruptcy estate." *Id.*

Similar to the defendants in *Brentano's* and *Philippe, supra,* TJX is a nondebtor guarantor entitled to indemnification by the debtor. Ames has agreed to indemnify TJX for:

> any loss, liability, claim, damage or expense (including reasonable legal fees and expenses) suffered or incurred by [TJX] to the extent arising from ... (iii) any obligations or liabilities of [TJX] or of any Subsidiary pertaining to the [Zayre Stores] Division ... and (iv) any guarantee or obligation to assure performance given or made by [TJX] or an affiliate of [TJX] with respect to any obligation of [TJX] or any Subsidiary pertaining to the [Zayre Stores] Division set forth in clause (iii) above.

Acquisition Agreement, ¶ 9.2. Although this language appears to indicate that TJX is entitled to indemnity, Apex expresses some doubt as to whether the contract of indemnity even applies to the debt involved in this case. But Apex has offered no plausible interpretation of the contract, or any other evidence for that matter, which indicates that Ames would not be required to indemnify TJX for satisfying its obligations under the lease. Based on Apex's unsubstantiated assertions, this court cannot conclude that the relevant indemnification provisions are inapplicable to the instant case. Nonetheless, "even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that that [sic] creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 995 (3d Cir.1984).

■ Apex also argues that even if TJX is entitled to indemnity, there can be no effect on the bankruptcy estate until Apex recovers a judgment against TJX, and TJX then files a claim against Ames. This argument is unavailing. Even if Apex is correct in arguing that this case cannot actually affect the estate until TJX pays

Apex, it does not follow that the instant case is not "related to" the bankruptcy proceeding. If the outcome of this case can have an impact upon the bankruptcy (as Apex appears to concede), then it is "related to" the bankruptcy case within the meaning of the Bankruptcy Code. In Apex's view, the threat of indemnification is too remote for the case to be considered related. Yet, there are explicit indemnity provisions governing the parties' rights with respect to the lease agreement; and Apex has not provided any evidence whatsoever demonstrating that such provisions could be avoided in this case. The court is not persuaded that this litigation is so far removed from the underlying bankruptcy case as to be characterized as unrelated.

■ Finally, Apex suggests that this lawsuit could not possibly affect the Ames estate because "funds are already allocated to pay Apex' claim." *Plaintiff's Memorandum,* at 7. Since Ames has designated funds for payment, Apex contends, the dispute between Apex and TJX will not affect the amount of property available for distribution to other creditors. According to Apex, if a judgment is obtained against TJX, then TJX will simply be substituted for Apex as claimant against the estate—with no effect on the allocation of property available for distribution to other creditors. In concluding that Ames has already allocated funds for payment, Apex relies entirely upon a letter from Ames dated May 17, 1990—a letter which Ames apparently sent in response to Apex's request for payment. Contrary to Apex's position, however, the letter does not demonstrate that Ames has allocated or otherwise set aside funds for satisfaction of the lease obligation. The letter merely states that Ames has characterized Apex's claim as a prepetition claim, and that it will be processed as such under the reorganization plan.

■ In any event, this litigation will ultimately determine the interests of the parties with claims arising from the shopping center lease. The resolution of this case will affect the arrangement of the creditors, and alter the debtor's rights and liabilities with respect to the claims against the

estate. Consequently, this case falls within the jurisdiction of the bankruptcy court. "The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets." *Xonics*, 813 F.2d at 131. To allow the bankruptcy court to resolve all issues affecting the Ames estate, the court finds that it is appropriate to refer this case to the bankruptcy court.[5]

■ In addition to its motion for referral to the bankruptcy court, TJX has moved for an extension of time to respond to Apex's complaint. TJX contends that it is not required to respond during the pendency of the automatic stay imposed in the Ames bankruptcy case. Whether the automatic stay extends to TJX is an issue which may be addressed by the bankruptcy court; therefore, this court need not resolve the issue at this time.

### CONCLUSION

For the foregoing reasons, TJX's motion to refer this case to the United States Bankruptcy Court for the Northern District of Illinois is granted. Having granted the motion for referral, this court need not address TJX's motion for an extension of time to respond to the complaint. That issue shall be addressed by the bankruptcy court.

IT IS SO ORDERED.

---

5. Of course, the bankruptcy judge cannot issue a binding decision in a proceeding that is "related to" the underlying bankruptcy. *Home Ins. Co.*, 889 F.2d at 749; 28 U.S.C. § 157(c)(1). Instead, the bankruptcy court makes recommendations subject to de novo review by the district court. *Home Ins. Co.*, 889 F.2d at 749; 28 U.S.C. § 157(c)(1).