In the Matter of GRABILL CORPORA-TION, Camdon Companies, Incorporated, Foxxford Group, Limited, et al., Debtors.

Appeal of NCNB NATIONAL BANK OF NORTH CAROLINA.

No. 91–3381.

United States Court of Appeals, Seventh Circuit.

Oct. 23, 1992.

Glen H. Kanwit, Matthew J. Botica, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellee.

Edward T. Joyce, Raymond A. Fylstra, Joyce & Kubasiak, Chicago, Ill., Robert D. Dearborn, Hayden J. Silver, III, Moore & Van Allen, Charlotte, N.C., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROVNER, Circuit Judges.

On consideration of the petition for rehearing and suggestion for rehearing *en banc* filed in the above-entitled cause, 967 F.2d 1152, on July 27, 1992 by petitioner-appellee, a vote of the active members of the court was requested, and a majority of the active members of the court have voted to deny a rehearing *en banc.*

Circuit Judges CUDAHY, POSNER and EASTERBROOK voted to grant rehearing *en banc.*

COFFEY, Circuit Judge, concurring in the denial of rehearing en banc.

The whole scheme of bankruptcy administration rests on a swift, efficient resolution of claims in a speedy trial in order that the debtor's business might continue or at least attempt to be salvaged in a timely manner while protecting the interests of the creditors. Allowing costly, time consuming, adjournment prone, cumbersome jury trials in the bankruptcy process defeats the very purpose of a speedy, inexpensive resolution of bankruptcy cases. *See* Fed.R.Bankr.P. 1001 ("These rules shall be construed to secure the just, *speedy,* and *inexpensive* determination of every case and proceeding.") (Emphasis added).[1] The delay incumbent in jury trial proceedings (from docketing, voir dire, challenges from the beginning to end, depositions, pre-trial conferences, expert witnesses, adjournments, jury instructions, and jury deliberations) necessitates keeping the number of jury trials in bankruptcy to an absolute minimum.[2] In fact, jury trials are the very antithesis of the speedy bankruptcy procedure. This Circuit, along with the Sixth, Eighth, and Tenth Circuits, have properly concluded that bankruptcy judges

---

[1] In the Seventh Circuit alone, from 1987 to 1991, 338,230 bankruptcy petitions were filed resulting in 22,255 adversary proceedings. *See* Memorandum re Hearings, Aug. 17–Sept. 11, 1992 (detailing one bankruptcy judge's handling of 107 hearings in 18 days). Evidence that jury trials would bog down a system designed for quick resolution of matters may be found from examining the civil jury trial backlog in the district courts. The median time in the districts of the Seventh Circuit ranged between 5 and 25 months from joinder of issue to trial, with 10% of the cases taking more than 36 months to reach trial. Administrative Office of the Feder-

al Courts, Statistics Division (1992); *see also Civil Cases have repeated delays,* Milw. Sentinel, Sept. 21, 1992 at 5A (discussing backlog of civil cases due to increasing number of criminal cases).

[2] Indeed, only 6 jury trials have resulted from the 241,559 bankruptcy filings in the Northern District of Illinois since 1985 (4 were held in district court and 2 in bankruptcy court). Office of the Clerk, Bankruptcy Court for the N. Dist. of Ill. This nominal figure underscores the lack of need for jury trials in bankruptcy.

are unauthorized to conduct jury trials. *See In re Baker & Getty Fin. Servs., Inc.,* 954 F.2d 1169 (6th Cir.1992); *In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir.1990); *In re United Missouri Bank,* 901 F.2d 1449 (8th Cir.1990).

We as federal judges possess only that authority entrusted to us under the Constitution and subsequent Congressional enactments. Because bankruptcy courts receive their jurisdiction and authority from Congress, it is not for us, an appellate court, to expand upon what Congress has delineated. *Palmore v. United States,* 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973). Contrary to the suggestion of my colleagues, Judges Posner and Easterbrook, we need not infer nor attempt to read in jurisdiction that Congress chose not to confer, rather we must recognize and always be cognizant of the fact that we have only that amount of power, authority and jurisdiction that Congress has seen fit to grant. *Id.; In re Kaiser,* 911 F.2d at 391 ("finding [that bankruptcy judges may hold jury trials] as an implied power [is] contrary to the doctrine of statutory interpretation that implied powers 'must be practically *indispensable* and *essential* in order to execute the power actually conferred'") (quoting *In re United Missouri Bank,* 901 F.2d at 1456 (emphasis added)). Certainly it cannot be said that it is either essential or indispensable that bankruptcy judges conduct jury trials. The district courts are—and I am quite sure in the future will remain—quite capable of handling these infrequent jury trials.

In the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress overhauled the bankruptcy process and failed to express an intention to empower bankruptcy judges to conduct jury trials. Moreover, because the United States Supreme Court has not seen fit to specifically reach this issue, *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 65, 109 S.Ct. 2782, 2803, 106 L.Ed.2d 26 (1989), *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.), *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 *vacated and remanded on other grounds,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991), we too should refrain from implying what Congress never intended.

One of my colleagues suggests that "[e]veryone believes that bankruptcy judges appointed under Article III could hold jury trials." Easterbrook dissent at 7. The bankruptcy code itself rejects this contention, "[e]ach bankruptcy judge, as a judicial officer of the district court, *may* exercise the authority *conferred* under this chapter...." 28 U.S.C. § 151 (emphasis added). Because Congress has not *conferred* the power to conduct jury trials on bankruptcy judges, all discussion regarding the qualifications of bankruptcy judges (comparing them to magistrate judges) is misleading. Magistrates have been expressly authorized by Congress to conduct jury trials within specific limits while bankruptcy judges are without such jurisdiction. *See* 28 U.S.C. § 636(c)(1) (authorizing magistrates to conduct civil trials when designated by the district court and consent is obtained from each of the parties).

Judge Posner maintains that "the panel majority has made a serious mistake" by refusing to expand the statutorily authorized powers of bankruptcy judges. Posner dissent at 5. I might suggest that my dissenting colleagues reread what they themselves have written on previous occasions when faced with similar problems, namely, a specific lack of authority, and have written that Congress itself should resolve such questions. *See, e.g., Board of Trade v. S.E.C.,* 923 F.2d 1270, 1277 (7th Cir.1991) (Posner, J.) ("[t]his is a question for Congress to decide"); *International Union, UAW v. Johnson Controls, Inc.,* 886 F.2d 871, 910, 915 (7th Cir.1989) (Easterbrook, J., dissenting) (suggesting that Congress is the appropriate forum for the dispute).

The panel majority has properly determined that bankruptcy judges may not conduct jury trials. The full Court need not reexamine this question, rather if a problem really exists, it is for the United States Congress to resolve after the full panoply of hearings, discussion, debate and action in order that all interested and well-versed advocates and/or objectors may be allowed

to participate in this questionable expansion of the bankruptcy process.

POSNER, Circuit Judge, dissenting from denial of rehearing en banc.

The interest and importance of the issue—whether bankruptcy judges can conduct jury trials—warrant its consideration by the entire court, even though we cannot resolve the conflict among the circuits. I explained in my dissent from the panel's decision why I think bankruptcy judges do have this power. Judge Easterbrook, in his opinion dissenting from the denial of rehearing en banc, reaches the same conclusion by a slightly different route, confirming my view that the panel majority has made a serious mistake the correction of which is the proper business of the full court.

EASTERBROOK, Circuit Judge, dissenting from the denial of rehearing in banc. This case illustrates how a question implies an answer. The panel asks "whether bankruptcy courts possess the statutory ... authority to conduct jury trials". 967 F.2d 1152, 1152 (7th Cir.1992). The majority answers "No." Nothing in the Bankruptcy Code authorizes that mode of procedure in bankruptcy courts. What is not authorized is forbidden, at least to judges without life tenure, the majority believes. The dissenting opinion accepts the question but says that silence in the Code means that courts may choose for themselves and permit bankruptcy judges to hold jury trials in order to facilitate disposition of cases without scattering issues among judges.

Suppose we ask, instead, "May bankruptcy judges with jurisdiction to try core proceedings use those procedures the Constitution prescribes?" Congress provided that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11". 28 U.S.C. § 157(b)(1). "[A]ll core proceedings" does not occasion deep hermeneutical difficulties. Sometimes the seventh amendment creates a right to jury trial, for example in a preference-recovery action against a person who has not made a claim against the estate. *Granfinanciera, S.A.*

*v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). Does the scope of "all core proceedings" shrink when the Constitution gives a party this right? Preference-recovery and fraudulent conveyance actions remain "core" proceedings, 28 U.S.C. § 157(b)(2)(F), (H), and "all" is still inclusive. The majority of the panel made a pass at § 157 by observing that Congress told bankruptcy "judges" rather than bankruptcy "courts" to hear and determine cases, but even in a jury trial the judge determines the case by passing on legal issues and entering judgment, sometimes judgment notwithstanding the verdict. Juries return verdicts, but only judges decide cases.

So we have a text committing all core proceedings to bankruptcy judges, and the fact that the proceeding is no less "core" if a jury sits. The subject matter of the claim, not the procedure used to assess factual disputes, determines "core" status in bankruptcy. 28 U.S.C. § 157(b)(2). Perhaps a tour through the legislative debates, stopping to savor the opaque comments about why Congress repealed 28 U.S.C. §§ 1471(b)–(c) and 1480 in 1984, would provide amusement, but today the Supreme Court espouses literalism in interpreting the bankruptcy laws. E.g., *Taylor v. Freeland & Kronz,* — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Connecticut National Bank v. Germain,* — U.S. —, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The Code supplies the only answer we need. To see this consider some other procedure, equally required by the Constitution and equally ignored in the Code. The Code does not mention testimony, cross-examination, briefs, oral argument, summary judgment, or any other ingredient of modern adjudication, yet all agree that bankruptcy judges may take evidence and allow cross-examination.

Congress defines the jurisdiction of courts; the Constitution, rules, and professional norms specify the procedures judges use to decide cases within that jurisdiction. *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), offers an example. Having decided that the seventh

amendment permits the defendant to demand a jury in a category of cases, the Court ordered judges to hold jury trials; it did not inquire whether some statute authorized or required juries. No wonder. Jurisdiction does not depend on procedure. Why paw through statutes for authority to impanel juries when the authority and the command appear in the Constitution of the United States? Congress could write a statute of the form "if jury trial, then change tribunals," but the Code does this only when the claim arises under state law. 28 U.S.C. §§ 157(b)(5), 1411.

Much of the debate within our court's panel, and among the other courts of appeals, revolves around the significance of bankruptcy judges' appointment for a term of years rather than during "good behavior." Compare *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.), vacated, —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), reinstated, 924 F.2d 36 (2d Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991), with *In re United Missouri Bank, N.A.*, 901 F.2d 1449 (8th Cir. 1990), and *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990). See also *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169 (6th Cir.1992). Everyone believes that bankruptcy judges appointed under Article III could hold jury trials. Yet to concede that a grant of additional tenure to bankruptcy judges, without any alteration of § 157, would permit the holding of jury trials in bankruptcy courts, is to concede that bankruptcy judges may conduct jury trials under the Code as it stands—just as judges in the District of Columbia, the federal territories, and the military, none of whom holds office "during good Behavior," conduct jury trials every day.

Tenure is unrelated to the procedures judges use to resolve disputes—at least after *Pernell v. Southall Realty*, 416 U.S. 363, 380, 94 S.Ct. 1723, 1732, 40 L.Ed.2d 198 (1974), disavowed the implication of *Capital Traction Co. v. Hof*, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899), that the "trial by jury" to which the seventh amendment refers is a proceeding before a judge with life tenure. Cf. *Peretz v. United States*, —— U.S. ——, 111 S.Ct. 2661, 115

L.Ed.2d 808 (1991). Security of position bestows freedom to apply the law without regard to contemporary politics. Tenure does not insulate the fact-finding process; quite the contrary, juries protect the citizens *from* tenured officers. The longer the tenure, the greater the need for the leavening effect of the jury. Temporary participants in the judicial process, jurors instill common sense and apply the balm of mercy, bringing law-in-action closer to contemporary beliefs about just outcomes. Why it should be objectionable for arbiters with 14–year terms to use this institution is beyond me. Juries may be less important when judges' terms are shorter, but they are no less appropriate. The higher costs, the lack of discipline, and the inconsistency that lead some to prefer judicial over lay decision do not change with the tenure of the umpire. And if bankruptcy judges with limited tenure are themselves problematic, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the presence of juries ameliorates rather than aggravates. Decision by a jury removes the onus of fact-finding from the non-tenured bankruptcy judge.

Rhetoric about life tenure notwithstanding, there is no substantial difference between the 14–year term to which bankruptcy judges are appointed and service "during good Behavior" for Article III judges. The active service of an average district judge approximates 14 years. Bankruptcy judges, generally appointed younger, could serve longer. Of course a district judge chooses his own time to retire or take senior status, while bankruptcy judges may strive to please those who will reappoint them. To whom do bankruptcy judges cater as the end of their term approaches? Not to the mob, or even to the political branches of government, but to the judges of the courts of appeals, who since 1984 have possessed the power to appoint bankruptcy judges. 28 U.S.C. § 152(a)(1). Fidelity to law, impartiality, and the other virtues that judges esteem lead to reappointment. Bankruptcy judges exhibiting "good Behavior" are reappointed.

Think about the incentives that we view as consistent with tenure. Four of this

circuit's eleven active judges used to be district judges, and a fifth served on the supreme court of a state. To obtain advancement a judge must please the political branches of government. Judges. who have taken senior status must satisfy their colleagues, at whose sufferance they continue to hear cases. 28 U.S.C. § 294(c), (e). A chief judge's or judicial council's power to stop assigning cases to senior judges is more potent than a court of appeals' power to withhold reappointment from a bankruptcy judge, yet no one supposes that senior district judges are incompetent to conduct jury trials.

District judges have plenty to do without an added load of trials whenever a trustee in bankruptcy tries to recover more than $20. Congress created a specialized corps of bankruptcy judges because it believed that consolidating disputes about a debtor's affairs would promote quick and efficient adjudication. The panel's decision sunders bankruptcy cases, forcing two judges to share the work and creating needless potential for conflict in approach. Bankruptcy judges may grant summary judgment but not directed verdicts and judgments notwithstanding the verdict, although these are different aspects of the same thing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). The panel also effectively gives litigants peremptory challenges to the judge; any creditor who does not like the way the bankruptcy judge is proceeding may ask for a jury trial and get not only a jury but also a different judge—unless the district judge returns the dispute to the bankruptcy judge to consider a motion for summary judgment. The costs

of judicial badminton would have to be borne if Congress had specified that bankruptcy judges *cannot* hold jury trials, but it did not.

Eventually Congress or the Supreme Court will give an answer. Last Term the Court decided nine bankruptcy cases.[1] Some were technical, the rest trivial. It has agreed to hear two more during the 1992 Term.[2] Meanwhile it has declined to end the enduring conflict among the circuits on the jury-trial question, which potentially affects a substantial percentage of all bankruptcy cases. While the Court remains shy, we should tackle the issue ourselves.

---

1. *Board of Governors of Federal Reserve v. MCorp Financial, Inc.*, —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991); *Union Bank v. Wolas*, —— U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991); *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Holywell Corp. v. Smith*, —— U.S. ——, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992); *Connecticut National Bank v. Germain*, —— U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *Barnhill v. Johnson*, —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Taylor v. Freeland & Kronz*, —— U.S. ——, 112

S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

2. *Reiter v. Cooper*, cert. granted, —— U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992) (whether bankrupt firm must pay tariff charges in full before obtaining the ICC's decision concerning the reasonableness of the rates); *Pioneer Investment Services, Inc. v. Brunswick Associates Limited Partnership*, cert. granted, —— U.S. ——, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992) (whether a lawyer's neglect permits a court to accept late-filed claims).