In re SALEM MILLS, INC., Debtor.

SALEM MILLS, INC., Plaintiff,

v.

WISCONSIN TOOL AND STAMPING COMPANY, Defendant.

WISCONSIN TOOL AND STAMPING COMPANY, Counterplaintiff/Third–Party Plaintiff,

v.

SALEM MILLS, INC., Counterdefendant,

v.

Raymond MOBILE, Rocco Palmi and R. Townley ROSE, Jr., Third–Party Defendants.

Bankruptcy Nos. 90 B 19859, 91 A 74.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 14, 1992.

Eugene Crane, Dannen, Crane, Heyman & Simon, Chicago, IL, Trustee.

Mark O. Beem, Miller, Shakman, Hamilton & Kurtzon, Chicago, IL, for Wisconsin Tool.

David A. Axelrod, David A. Axelrod & Associates, Chicago, IL, for Rose, Palmi and Mobile.

## MEMORANDUM DECISION

SUSAN PIERSON SONDERBY,
Bankruptcy Judge.

The sole issue is whether this Court has jurisdiction to hear a third-party complaint even though Salem Mills, Inc. ("Debtor") is no longer a party litigant. After having read the parties' briefs, the Court finds that it has "related to" jurisdiction to entertain this proceeding.

## BACKGROUND

On October 3, 1990, Salem Mills filed suit in the Circuit Court of Cook County, Illinois, against Wisconsin Tool and Stamping Company ("Wisconsin Tool") and its president, Robert Ernst.[1] The state court action involved an alleged breach of contract. About the same time, Heidtman Steel Company ("Heidtman") and Liberty Steel Company ("Liberty") commenced individual actions naming Salem Mills and Wisconsin Tool as codefendants. New Process Steel Company also brought suit, but named only Wisconsin Tool as a party defendant. All three of those cases asserted breach of contract claims.

On October 27, 1990, an Involuntary Petition was filed against Salem Mills and on November 27, 1990 the Court entered an Order for Relief in a voluntary Chapter 11 case.[2] In January 1991, Wisconsin Tool removed the Debtor's state court action to the bankruptcy court, and filed a twenty-count Third Party Complaint/Counterclaim against the Debtor, its principals, Raymond A. Mobile ("Mobile") and R. Townley Rose ("Rose"), and an employee of Wisconsin Tool, Rocco Palmi. The Third Party Complaint/Counterclaim contains numerous causes of action including fraud, commercial bribery, breach of fiduciary duties, breach of contract and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In addition to the various actions, Wisconsin Tool asserted indemnification claims against the Debtor, Mobile and Rose regarding any liability arising from the actions commenced by Heidtman, Liberty and New Process.[3] The Third Party Complaint/Counterclaim contains no alleged violations of the Bankruptcy Code.

Mobile and Rose sought to have the district court withdraw Wisconsin Tool's counterclaim pursuant to 28 U.S.C. § 157(d). On July 19, 1991, the district court granted their request in part. The district court withdrew the adversary proceeding for a trial on the merits but remanded for ruling on all interlocutory matters as well as administration of the final pretrial order. The Heidtman, Liberty and New Process cases are presently before this Court and have been consolidated with the pending adversary proceeding for pre-trial purposes.[4]

---

1. Robert Ernst was dismissed as part of the settlement entered by this Court on May 12, 1992. (Settlement Agreement ¶ 1.)

2. The case was subsequently converted to a case under Chapter 7.

3. Specifically, in Counts I, IV, V, VI, VIII, XIII, and XX, Wisconsin Tool seeks the following relief against the Debtor, Mobile and Rose:
   Such damages to Wisconsin Tool, if any, that Wisconsin Tool shall incur or be required to pay to Heidtman Steel Company, New Process Steel Corp., Liberty Steel Company, or any other person or company....
   (Counterclaim). Wisconsin Tool's counterclaim and cross-claims applied to the Heidtman, Liberty and New Process actions. *See* Court Orders in each case dated October 11, 1991.

4. Judge Conlon referred the Heidtman proceeding to this Court as a proceeding related to the underlying bankruptcy case. Wisconsin Tool removed the Liberty proceeding from the state court to this Court as a proceeding related to the underlying bankruptcy case. On October 30,

On May 12, 1992, the bankruptcy court approved a settlement of Wisconsin Tool's cross-claim involving the Debtor. Pursuant to the settlement, Wisconsin Tool dismissed the Debtor as a party litigant, but preserved its indemnification rights against the Debtor for any amounts found to be due and owing in the Heidtman, Liberty and New Process cases.[5] The settlement agreement failed to resolve the third-party dispute between Wisconsin Tool and the Debtor's principals. Thus, the proceeding pending before this Court involves Wisconsin Tool as a plaintiff and Rose and Mobile as defendants. Neither the Debtor nor its property is directly involved in the pending litigation.

At the Court's request, the parties submitted briefs addressing the issue of whether the present proceeding is "related to" the underlying bankruptcy case in light of the settlement between the Trustee and Wisconsin Tool, which dismissed the Debtor as a party litigant. Wisconsin Tool contends that the proceeding is "related to" the bankruptcy case because the settlement agreement maintains Wisconsin Tool's right to seek indemnification from the Debtor. The gist of Mobile's and Rose's argument is that Wisconsin Tool's indemnification claim against the Debtor stretches the Court's limited grant of jurisdiction too far.[6]

## DISCUSSION

■ The sole issue before this Court is whether the present proceeding is related to the Debtor's underlying bankruptcy case in light of the Trustee's settlement with Wisconsin Tool which dismissed the Debtor as a party litigant. Subsumed by this issue is the interesting question of whether parties can settle themselves out of bankruptcy court jurisdiction.

■ Jurisdiction "related to" the underlying bankruptcy case provides the broadest grant of jurisdiction because it allows bankruptcy courts to adjudicate actions not created by or determined under Title 11 nor involving the debtor as a litigant. This type of jurisdiction allows a bankruptcy court to hear disputes between a debtor's creditors or non-debtor parties if those disputes "involve property of the estate or if resolving the creditors' intramural squabble will affect the recovery of some other creditor." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) (quoting *In re Kubly*, 818 F.2d 643, 645 (7th Cir.1987)). In other words, a controversy is not "related to" a bankruptcy unless resolution " 'affects the amount of property available for distribution or the allocation of property among creditors.' " *In re Spaulding & Co.*, 131 B.R. 84, 88 (N.D.Ill.1990) (quoting *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989)). Because this grant of jurisdiction could entail many non-bankruptcy actions, the Seventh Circuit has narrowly interpreted "related to" jurisdiction:

> not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involving persons not party to the bankruptcy. Overlap between the bankrupt's affairs

1992, this Court dismissed with prejudice Wisconsin Tool from the Heidtman and Liberty proceedings as sanctions for failure to prosecute and to comply with discovery requests. The Heidtman and Liberty proceedings, therefore, remain pending against the Debtor, only.

Although Salem Mills was not named as a party litigant, New Process in its action contends that Salem Mills had authority to act on behalf of Wisconsin Tool. In its answer, Wisconsin Tool denies New Process' allegation. Wisconsin Tool requested the district court refer this matter to this Court because Wisconsin Tool intended to assert a third-party claim against the Debtor. Judge Duff referred the matter to this Court as a proceeding related to the underlying bankruptcy case.

5. The settlement agreement specifically provides in paragraph 5 that Wisconsin Tool "maintains its right to pursue its Indemnification Claims against Salem Mills for any amounts found to be due and owing to Liberty Steel, Heidtman Steel, and New Process arising out of Adversary Proceedings 91 A 144, 91 A 511, 91 A 585." (Settlement Agreement, ¶ 5). As noted *supra* note 3, Wisconsin Tool has been dismissed as a party defendant in the Heidtman and Liberty proceedings.

6. The Court notes with some concern that Mobile's and Rose's three-page brief fails to cite any statutory authority or case law in support of their position.

and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors.

*Home Ins.*, 889 F.2d at 749.

In the present proceeding, the settlement agreement dismissed the Debtor as a party litigant, but subjects the Debtor to an indemnification claim, if asserted by Wisconsin Tool, for any amounts found due and owing to Liberty Steel, Heidtman Steel, and New Process.[7] (Settlement Agreement, ¶ 5). Wisconsin Tool contends that a lawsuit which may result in an indemnification claim against a debtor renders that lawsuit "clearly related" to the underlying bankruptcy case because it causes the debtor to have reduced assets to satisfy claims of other creditors. Wisconsin Tool cites for support the decision of *Apex Invest. Assoc. v. TJX Cos.*, 121 B.R. 522 (N.D.Ill.1990).

In *Apex*, TJX guaranteed to Apex Investment Associates, Inc.[8] ("Apex") its Zayre Stores Division lease obligations. TJX later sold the division to Ames Department Stores and Ames agreed to indemnify TJX for any loss, liability, etc. arising from the liabilities and obligations assumed by Ames. Later, Ames commenced a Chapter 11 bankruptcy proceeding which prompted Apex to seek payment from TJX. The district court referred Apex's collection action to the bankruptcy court as a proceeding related to the underlying bankruptcy case. The Court reasoned that by virtue of the agreement to indemnify TJX, the debtor would have less "assets available to satisfy the claims of other creditors—a result which unquestionably impacts upon the administration of the Ames' estate." 121 B.R. at 525.

Contrary to the *Apex* court's assertion, an indemnification agreement does not automatically reduce the amount of assets available for distribution. After all, a typical indemnity agreement relegates the original indemnitor to unsecured status, and thus impacts upon the allocation of assets among that class of creditors, not the size

of the asset pool. Only in cases where the original indemnitor holds property of the estate against which liability can be offset does the action unquestionably impact upon the assets of the estate. The *Apex* court failed to analyze properly what impact the indemnity arrangement had upon the allocation of assets and instead presumed that a potential indemnity claim against the debtor impacted estate property, and thus was related.

District Court Judge Holderman addressed a similar issue in *In re Spaulding & Co.*, 131 B.R. 84 (N.D.Ill.1990). There, the debtor asserted a preference action against Gordon Buchanan, who filed a third-party complaint against the debtor's former counsel ("BRK") seeking indemnification for any liability to the debtor. The bankruptcy court dismissed the third-party complaint for lack of subject matter jurisdiction. The district court affirmed.

In accord with Seventh Circuit case law, the *Spaulding* court analyzed the impact that BRK's indemnification claim would have upon either the amount of property available for distribution or the allocation of property among creditors. 131 B.R. at 88 (citing *Home Ins.*, 889 F.2d at 749). The court reasoned that the indemnification claim, if asserted, would have no impact upon the amount of property available for distribution because the claim involved neither property of the estate nor the debtor's recovery of property. *Id.* at 89. The court concluded, therefore, that jurisdiction to hear the third party claim as related to the underlying bankruptcy case by virtue of an impact on the size of the estate did not exist. *Id.* This Court finds the *Spaulding* reasoning persuasive.

■ The *Apex* court also relied upon existing case law which erroneously concludes that an action among non-debtor parties involving an indemnity agreement against the debtor is *per se* related to the underlying bankruptcy case. These decisions recognizes that an indemnification agreement would impact the estate *if* the

---

**7.** *Supra* n. 4.

**8.** Apex succeeded American National Bank and Trust Company of Chicago as lessor. *Apex,* 121 B.R. at 524.

indemnitee obtained a judgment against the original indemnitor. 121 B.R. at 525–26. Rejecting Apex's argument that TJX would have to obtain an actual judgment or file a proof of claim in order for the third-party proceeding to be "related to" the underlying case, the *Apex* court concluded:

> If the outcome *can have* an impact upon the bankruptcy (as Apex appears to concede), then it is "related to" the bankruptcy case within the meaning of the Bankruptcy Code.

*Apex*, 121 B.R. at 526 (emphasis added). The *Apex* court, therefore, focused on the potential impact, not the actual impact, that a proceeding might have upon the underlying bankruptcy case.

There is no support for the *Apex* court's broad definition. The Seventh Circuit expressly stated that a dispute is related to the underlying bankruptcy case if it "affects the amount of property available for distribution or allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). There is nothing contingent about the Court of Appeal's directive. If this Court were to modify the definition of a "related to" proceeding to include proceedings which could potentially impact upon the allocation of assets, as the *Apex* court concludes, this Court would undermine the limited jurisdiction Congress intended bankruptcy courts to exercise over actions neither created by nor determined under Title 11. Bankruptcy courts provide a forum for claim resolution, not potentially related claim litigation.

The *Apex* court also incorrectly concluded that an action by a creditor against a guarantor of a debtor's obligations will always affect that creditor's status vis a vis other creditors. *Apex*, 121 B.R. at 526. The *Spaulding* court addressed this same issue of whether an indemnification claim would effect the allocation of property among creditors, and noted that the distribution to creditors could be impacted, but only to the extent that the original indemnitor filed a proof of claim against the debtor for the cost of indemnification. *Id.* at 89. In *Spaulding*, however, BRK had not yet filed a proof of claim in the debtor's bankruptcy, which was critical to the court's finding. The court held that:

> Given the remoteness of any possible effect upon the allocation of Spaulding's estate caused by Mr. Buchanan's third-party claim and given that BRK has not yet filed a proof of claim in Spaulding's bankruptcy case, at this time this court's "relating to" jurisdiction fails to support Mr. Buchanan's third-party claim.

*Spaulding*, 131 B.R. at 89. The *Spaulding* court's holding recognizes that a proceeding related to the underlying bankruptcy must have a real or tangible or conceivable impact upon the allocation of property among creditors evidenced by an actual proof of claim, and not some probable or contingent occurrence.

This Court finds the *Apex* reasoning unpersuasive because it opens the floodgates on the number of non-debtor third-party claims involving indemnities of some sort that may be pursued as "related to" the underlying bankruptcy case. There must exist some point at which "related to" jurisdiction does not exist even though it *may* impact upon creditors in some way. Requiring a party who may seek indemnification to file a proof of claim transforms a potential claim into a tangible claim by allowing a bankruptcy court to look beyond the "relatedness" allegations of the parties. Once the claim is filed, the bankruptcy court can contingently value that claim and at that time learn the true impact the third-party proceeding may have upon the allocation of assets among creditors, if any.

The whole scheme of bankruptcy administration rests on a swift, efficient resolution of claims in order that the debtor's business might continue or at least attempt to be salvaged in a timely manner while protecting the interests of the creditors. *In re Grabill Corp.*, 976 F.2d 1126 (7th Cir.1992). Allowing a non-debtor party to litigate its non-debtor dispute involving a purported indemnification claim against the debtor in a bankruptcy forum which may or may not result in a claim against the estate would defeat the very scheme of efficient claims resolution. If a proceeding is related to the underlying bankruptcy by virtue of an indemnification agreement against the debtor, there must be something to evidence the impact, like a proof of claim; otherwise, the Court has no interest

in the non-debtor parties' squabble. In other words, if a party has no intention of filing a claim against the estate, then this Court certainly has no interest in hearing the proceeding from which the unfiled claim may arise.[9]

With the Debtor's dismissal, the present situation becomes very similar to that in *Spaulding.* In *Spaulding,* the debtor had to prevail in its preference action against Buchanan before BRK could assert its indemnification claim. Similarly, Wisconsin Tool's indemnification claim will exist only if Heidtman, Liberty, or New Process were to prevail in their action against Wisconsin Tool. The likelihood of this success has been greatly diminished because of the Court's recent order dismissing Wisconsin Tool from two of the three actions. Like BRK's indemnification claim in *Spaulding,* Wisconsin Tool's indemnification claim would not adversely impact upon the size of the Debtor's estate, but rather would impact upon the allocation of the Debtor's assets among creditors to the extent a claim has been filed. Unlike the situation in *Spaulding,* however, Wisconsin Tool has filed a proof of claim based upon the indemnity agreement.[10] Consequently, Wisconsin Tool's third-party action is related to the underlying bankruptcy case even though the Debtor is no longer a party litigant.

## CONCLUSION

For the foregoing reasons, the Court finds that the present proceeding is "related to" the underlying bankruptcy case.

---

9. Requiring a real or tangible impact upon the estate as signifying a "related to" proceeding is consistent with this Court's reading of *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). In *Pacor,* the Court of Appeals articulated that a proceeding is related to the underlying bankruptcy case if that proceeding could "conceivably" have any effect on the estate. *Id.* Absent the filing of a proof of claim involving a third-party indemnification action, it is unknown whether the original indemnitor will assert a claim if prevailing. As noted by Judge Schmetterer, "[m]any factors go into a creditor's decision whether to file a proof of claim and this court cannot assume that such a proof of claim will be filed." *See In re Spaulding & Co.,* 111 B.R. 689, 694 (Bkrtcy.N.D.Ill.1990), *aff'd,* 131 B.R. 84. Thus, a proof of claim merely transforms the improbable into the conceivable.

10. Although Wisconsin Tool's claim does not use the term indemnity, the claim certainly makes clear that Wisconsin Tool shall seek compensation from the estate for any amounts Wisconsin Tool is found liable in the pending actions. Wisconsin Tool's proof of claim seeks $500,000 as compensation for any such liability.