In Re UNITED STATES BRASS
CORPORATION, Debtor.

George & Donna ANDERSON, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Robert & Helen PATTERSON, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Dan & Pearl DANIELS, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

James & Christa CLARKE, et al.

v.

HOECHST CELANESE CORPORATION,
et. al.

Kenneth & Patsy DUNN, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

John & Pamela ASHLEY, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

James & Beverly COX, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Hector & Julia ARMSTRONG, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

William & Lisa ADKINS, et al.

v.

U.S. BRASS CORPORATION.

William & Lisa ADKINS, et al.

v.

U.S. BRASS CORPORATION.

GREENTREE AT THE GARDENS, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Charles HUTCHINSON, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Hallene JOHNSON, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Steven & Robin KOLTON, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Mark & Julienna McWHORTER, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Brenda NELSON, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Ronald & Arah PHILLIPS, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

PINEFOREST MOTEL, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Milton & Jean RYAN, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Alex STOLARSKI, et al.

v.

HOECHST CELANESE CORPORATION,
et al.

Mike & Yvette STRUTZ, et al.

v.

HOECHST CELANESE CORPORATION, et al.

Bankruptcy No. 94–40823.
Adv. Nos. 94–4076, 94–4082 to 94–4101.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Oct. 28, 1994.

Anne M. Ferazzi, Verner, Liipfert, Bernhard, McPherson and Hand, Houston, TX, for plaintiffs.

Patrick Kelley, Ireland, Carroll & Kelley, Tyler, TX, for U.S. Brass Corp.

Michael Samford, Kasowitz, Hoff, Benson & Torres, Houston, TX, for Hoechst Celanese.

Jarrel D. McDaniel, Vinson & Elkins, Houston, TX, for Shell Oil.

### OPINION

DONALD R. SHARP, Bankruptcy Judge.

COMES NOW before the Court the Motion to Abstain and Remand and Brief in Support Thereof ("Remand Motion") filed by the Plaintiffs in the above-referenced adversary cases ("Plaintiffs") and the Emergency Motion of Shell Oil Company for Relief from Automatic Stay ("Lift Stay Motion") pursuant to regular setting in Beaumont, Texas. The parties agreed that the issues in both motions were so intertwined that it would be appropriate to combine them for hearing. This opinion constitutes findings of fact and

conclusions of law in accordance with Fed. R.Bankr.P. 7052 and disposes of all issues in both motions before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

U.S. Brass Corporation ("U.S. Brass" or "Debtor"), Shell Oil Company ("Shell"), and Hoechst Celanese Corporation ("Celanese") were involved in the manufacturing and producing of polybutylene plumbing.

Various components of these plumbing systems deteriorate when they come into contact with chlorinated water causing damage to the homes in which the systems are located. Consequently, numerous suits have been filed in state courts nation wide against U.S. Brass, Shell, Celanese, and other parties. Shell has filed cross-claims against the other co-defendants including U.S. Brass. These suits represent tens of thousands of individual claims. Plaintiffs are homeowners who have polybutylene plumbing systems in their homes and have filed suits in state court against U.S. Brass, Shell, Celanese and other parties.

In an attempt to deal with the mounting litigation, U.S. Brass, Shell, and Celanese entered into a Plastic Plumbing Sharing Agreement (the "Sharing Agreement") effective March 22, 1989. According to the Sharing Agreement the parties were to share settlements and judgments in the following percentages: U.S. Brass = 70%; Celanese = 20.5%; Shell = 9.5%. The terms of this Sharing Agreement are the subject of another suit.

Because certain of U.S. Brass' insurance carriers contest the nature and extent of coverage, U.S. Brass continued to be exposed to protracted litigation and continued to bear the significant costs of defense. U.S. Brass is currently in litigation with these insurance carriers to determine the extent of coverage.

As a result of all these factors, U.S. Brass filed for relief under Chapter 11 of the U.S. Bankruptcy Code on May 24, 1994.

At that time, Plaintiff's suits were at various stages in various state courts. As a result of U.S. Brass's bankruptcy petition, Shell and Celanese had the above referenced suits removed to this Court on June 3, 1994 ("Removed Actions").

Plaintiffs filed their Remand Motion on June 16, 1994, to have the Removed Actions remanded back to the various state courts. This motion is supported by both U.S. Brass and the Creditor's Committee.

Shell and Celanese oppose the Remand Motion and, in the alternative, filed the Lift Stay Motion.

On June 28, 1994, Shell filed a proof of claim against Debtor in the amount of $840,-000,000, representing Debtor's obligation to pay a portion of the judgments pursuant to the Sharing Agreement.

### ISSUES

1. Whether this Court has proper jurisdiction over the Removed Actions?

2. Whether this Court is required to abstain from the Removed Actions?

3. Whether this Court should exercise discretionary abstention and remand the Removed Actions under principles of equity?

4. Whether this Court should lift the stay upon remand to allow parties to pursue remedies against Debtor?

### DISCUSSION OF LAW

#### A. JURISDICTION

Plaintiffs maintain that the Removed Actions were improperly removed to this Court because this Court does not have jurisdiction over these matters. See 28 U.S.C. § 1452. This Court is granted jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334.

For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least

"related to" the bankruptcy. *Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987).

In order to be "related to" Debtor's bankruptcy, the Court must determine that the outcome of the Removed Actions could conceivably have an effect on the estate being administered in bankruptcy. *Id.; Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984); *In re TGX Corp.,* 168 B.R. 122 (W.D.La.1994). Clearly, in this case, the outcome of the Removed Actions will affect Debtor's estate.

The Sharing agreement between Shell, Celanese, and U.S. Brass is essentially an indemnification agreement. If the suits proceed to a favorable judgment against Shell and Celanese, they will have an indemnification claim against Debtor under the agreement.

Courts have held that state court suits with a similar underlying indemnification agreement between debtor and other co-defendants are related to debtor's bankruptcy case. *In re Salem Mills, Inc.,* 148 B.R. 505, 510 (Bkrtcy.N.D.Ill.1992); *In re Brentano's, Inc.,* 27 B.R. 90, 92 (Bkrtcy.S.D.N.Y.1983).

Plaintiffs assert that the Sharing Agreement should not confer "related to" jurisdiction because the primary action of Plaintiffs is a mere precursor to the potential third party claim for indemnification by Shell and Celanese against Debtor. Certainly, if a proceeding is related to the underlying bankruptcy by virtue of an indemnification agreement against debtor, there must be something to evidence the impact, like a proof of claim; otherwise the Court has no interest in the non-debtor parties' squabble. *Salem Mills,* 148 B.R. at 510.

However, Shell has filed a proof of claim under the Sharing Agreement for $840,000,-000. Therefore, the Removed Actions are related to Debtor's bankruptcy and this Court has proper jurisdiction over the matters. *Id.*

Having determined that this Court has proper jurisdiction, the Court must determine whether it should abstain or remand.

### B. *MANDATORY ABSTENTION*

There appears to be some dispute over whether the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) apply to cases removed under 28 U.S.C. § 1452. This Court believes that it is the majority opinion that abstention does apply to cases removed under § 1452. See *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 584 n. 3 (6th Cir.1990); *Williams v. Shell Oil Co.,* 169 B.R. 684, 690 (S.D.Cal.1994); *In re Baldwin ·Park Inn Associates,* 144 B.R. 475, 481 (C.D.Cal.1992); *In re Chiodo,* 88 B.R. 780, 785 (W.D.Tex.1988). For dissenting opinions see *In re Branded Products, Inc.,* 154 B.R. 936, 939 (Bankr.W.D.Tex.1993); *In re 666 Associates,* 57 B.R. 8 (Bankr.S.D.N.Y.1985).

Therefore, this Court is required to abstain from the removed actions if: 1) a party to the proceeding has filed a timely motion to abstain; 2) the proceeding is based on a state law claim; 3) the proceeding is a "related to" proceeding; 4) there is no basis for federal court jurisdiction other than section 1334; 5) an action has been commenced [1] in state court; and the state court action can be timely adjudicated. 28 U.S.C. § 1334(c)(2); *In re Engra, Inc.,* 86 B.R. 890, 894 (S.D.Tex.1988).

The Removed Actions were removed to federal court on June 3, 1994, and Plaintiffs filed their Remand Motion on June 16, 1994. This Court believes that to be a timely motion to abstain.

The Removed Actions are based entirely on state law. Furthermore, Defendants have not asserted any cross claims or counterclaims that involve federal statutes.

As previously discussed, the Removed Actions are "related¡to" the bankruptcy. Furthermore, it is clear to this Court the Removed Actions do not "arise in" or "arise under" the bankruptcy case. The Removed

---

1. The court in *In re Engra, Inc.,* 86 B.R. 890, 894 (S.D.Tex.1988), actually used the term "pending". However, pursuant to the language of the statute, 28 U.S.C. § 1334(c)(2), and the analysis in *Baldwin Park,* 144 B.R. at 481, and *Chiodo,* 88 B.R. at 784, this Court believes "commenced" is the proper term.

Actions were filed prior to Debtor's petition for bankruptcy, exist independently of bankruptcy law, and thus, cannot "arise under" title 11 or "arise in a case under" title 11.

There is no basis for federal court jurisdiction other than § 1334. All claims involved arise under state law and there has been no assertion of an independent basis for federal jurisdiction.

All the Removed Actions were commenced in state court. Moreover, the Court believes that the Removed Actions can be timely adjudicated in state court. Shell asserts that the suits can be more timely adjudicated by this Court. In fact, they ultimately intend to remove all such litigation nationwide, representing some 80,000 claims, to this Court for adjudication. The Court is unconvinced that this is the most expedient way to handle these claims. Many of the suits are already set for trial in state court before year end. Considering the large number of claims involved, the Court believes that it will take longer to adjudicate the claims in this Court than it will to adjudicate the claims in various state courts nationwide.

Clearly all the requirements of § 1334(c)(2) have been met, therefore, this Court must abstain from hearing the Removed Actions.

### C. *PERMISSIVE ABSTENTION AND EQUITABLE REMAND*

■ Notwithstanding the Court's findings in the previous section, the Court believes it should exercise its rights of permissive abstention and equitable remand.

■ The Court has discretionary power under § 1334(c)(1) to abstain in the interest of justice, or in the interest of comity with State Courts or respect for State law. 28 U.S.C. § 1334(c)(1); *Williams,* 1994 WL 374549, *8.

Section 1452(b) further provides that the court to which a claim or cause of action is removed may remand such claim or cause of action on any equitable ground. 28 U.S.C. § 1452(b).

A considerable overlap exists between the factors appropriate to abstention and those appropriate to remand. *Engra,* 86 B.R. at 895. The various factors which may be considered by courts are enumerated at length in *Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984); and *In re Republic Reader's Service, Inc.,* 81 B.R. 422, 429 (Bkrtcy.S.D.Tex.1987). This Court will only address the factors believed to be relevant to the Removed Actions.

To begin with, it is undisputed that the issues related to the Removed Actions are controlled by state law. The claims involve actions for strict liability, negligence, fraud, negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act. The Court notes that while these areas of law may not be inherently complex, the number of plaintiffs, defendants, and individual claims add a large degree of complexity to the issues. The fact that state court has already handled several trials and settlements in polybutylene matters qualifies the state court as the forum which can most efficiently adjudicate polybutylene plumbing litigation on a class action scale.

Furthermore, as discussed earlier, this Court believes that individual state courts can achieve a more timely adjudication of the issues than this Court could if all polybutylene litigation were removed to this Court. Many of the Removed Actions already have trial dates set in state court. This Court does not believe it could hear all claims before they could be heard in state court.

Burdening this Court with complex multiple products liability litigation could unduly delay Debtor's reorganization efforts as well.

Therefore, in the interests of equity, this Court will abstain and remand the Removed Actions back to the various state courts.

### D. *LIFT STAY*

Upon remanding the Removed Actions, Shell and Celanese urge this Court to lift the stay against U.S. Brass to allow all parties to pursue their claims against U.S. Brass.

■ The purpose of the automatic stay under § 362 of the Bankruptcy Code is to provide the debtor with a breathing spell from creditors in order to permit the debtor to attempt a plan of reorganization. *Matter*

of S.I. Acquisition, Inc., 817 F.2d 1142, 1146 (5th Cir.1987); In re Lile, 103 B.R. 830, 836 (Bkrtcy.S.D.Tex 1989), aff'd, 161 B.R. 788 (S.D.Tex.1993).

 Relief from the automatic stay will be granted to an unsecured creditor, such as Shell and Celanese, only when the "balance of hardships" tips in the creditor's favor. In re International Endoscope Mfrs., Inc., 79 B.R. 620, 622 (Bkrtcy.E.D.Pa.1987). When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief. In re Curtis, 40 B.R. 795, 806 (Bkrtcy. D.Utah 1984).

The Court believes that lifting the stay against Debtor will unduly burden the administration of the estate. Debtor is in the early stages of its reorganization efforts. This Chapter 11 case has more than ordinary complexity, and the Court believes that Debtor's efforts should be concentrated on the reorganization at this stage. Debtor has expressed a sincere desire to attempt a reorganization and pay creditors' claims. Consequently, the Court believes that the Debtor would be extremely prejudiced by a lifting of the stay. See In re Leonard, 51 B.R. 53, 54 (Bkrtcy.D.C.1985).

Shell and Celanese argue that Debtor will not be prejudiced by lifting the stay because their insurance carriers are under a duty to defend Debtor. However, even claims against Debtor's insurers impacts upon property of the estate and Debtor must expend its resources to some degree to defend even claims which are ultimately totally covered for payment by insurance. In re Metro Transp. Co., 82 B.R. 351, 354 (Bkrtcy. E.D.Pa.1988).

Furthermore, Debtor's insurance coverage is in dispute; in fact, Debtor has been required to pay its own defense costs in the past. Debtor is a named defendant in most of the suits and Shell and Celanese are asserting cross-claims against Debtor. Consequently, lifting the stay would force Debtor to expend time and resources in its defense, causing diminution of the estate assets and hindrance of the reorganization efforts.

Therefore, the Court believes that lifting the stay would effectively demolish Debtor's attempt to achieve a reorganization.

## CONCLUSION

For the reasons stated above, the Remand Motion is GRANTED and the Lift Stay Motion is DENIED.