Robert L. WILLIAMS and Nancy K. Williams, Plaintiffs,

v.

SHELL OIL COMPANY, et al., Defendants.

Gene CIOE, et al., Plaintiffs,

v.

SHELL OIL COMPANY, et al., Defendants.

Robert HERNANDEZ, et al., Plaintiffs,

v.

UNITED STATES BRASS CORP., et al., Defendants.

DUNHAM & ASSOCIATES ASSET MANAGEMENT, INC., Plaintiff,

v.

FIRST FEDERAL BANK, et al., Defendants.

Donald WOFFORD, et al., Plaintiffs,

v.

SHELL OIL COMPANY, et al., Defendants.

Alberto IGNACIO, et al., Plaintiffs,

v.

GASCON DEVELOPMENT, et al., Defendants.

John GOODMAN, et al., Plaintiffs,

v.

HEATHER GLEN LIMITED, et al., Defendants.

SUNSET RIDGE OWNERS ASSOC., Plaintiff,

v.

W. WOLF PROPERTIES, INC., Defendant.

Timothy DUREN, Plaintiff,

v.

HOECHST CELANESE CORP., et al., Defendants.

Norma Jean ARNOLD, et al., Plaintiffs,

v.

The BALDWIN CO., et al., Defendants.

John P. DiLUSTRO, et al., Plaintiffs,

v.

BREN CO., et al., Defendants.

Marc CORWIN, et al., Plaintiffs,

v.

RANCHO BERNARDO DEVELOPMENT COMPANY, et al., Defendants.

Civ. Nos. 94–906 R (AJB), 94–911 K (AJB), 94–907 IEG (AJB), 94–913 R (AJB), 94–909 GT (CGA), 94–914 H (AJB), 94–915 B (CM), 94–910 S (AJB), 94–912 B (BTM), 94–917 K (BTM), 94–918 R (LSP), and 94–916 GT (CM).

United States District Court,
S.D. California.

July 11, 1994.

Robert B. Gerard, Lynde Selden, II, Gerard, Selden, Osuch & Johnson, Terry D. Ross, Barbara J. Orr, James T. Hannink, Gray Cary Ware & Freidenrich, P.C., San Diego, CA, for plaintiffs.

Robert G. Steiner, R. William Bowen, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Hoechst Celanese Corp.

## AMENDED ORDER GRANTING MOTION TO REMAND AND DENYING MOTION TO TRANSFER [1]

RHOADES, District Judge.

On June 8, 1994, twelve cases concerning polybutylene plumbing systems were removed from state court to the District Court for the Southern District of California by defendant Hoechst Celanese Corporation

---

1. The Court's Amended Order is issued for purposes of publication.

("Celanese"). Two days later, on June 10, Plaintiffs Robert L. and Nancy K. Williams ("Williams") filed an *ex parte* Motion to Remand.[2] A hearing was held, and discovery issues were addressed. The Motion to Remand was joined by Plaintiffs Sunset Ridge Owners Association, Inc., et al., Defendant Western Plastic and Rubber Co., Defendant Rancho Bernardo Development Co., et al., Defendant Christopher Homes, Inc. and Defendant Norland Plastics, Inc.

Also, on June 10, 1994, Defendant Celanese filed a Motion to Transfer to United States Bankruptcy Court for the Eastern District of Texas. Defendants Plast–A–Matic Corp., Vanguard Plastics, Inc., and Admiral Marine Products Co. join Celanese's Motion to Transfer. At the hearing on June 10, 1994, the parties were granted leave to file briefs supporting and opposing the motions.[3] For the reasons stated below, this Court grants Williams's Motion to Remand and Denies Celanese's Motion to Transfer.

## I. BACKGROUND

A series of cases concerning polybutylene plumbing systems were removed to this Court on June 8, 1994, from San Diego County Superior Court. According to Williams, the first polybutylene case was filed in Superior Court some nine years ago. Since then, several dozen cases have been filed. Although most of the cases settled, three went to trial and resulted in jury verdicts finding defendants Celanese, Shell Oil Co. and U.S. Brass independently liable for the defects and damages.

Because of the large number of cases filed in Superior Court, the cases were coordinated before a single judge, the Honorable Ronald L. Johnson. Judge Johnson issued a comprehensive Case Management Order orchestrating the discovery in the cases. Over the course of the past year, Judge Johnson has heard and ruled on motions for judgment on the pleadings and motions for summary adjudication of virtually all of the claims in the various complaints, as well as motions relating to consolidation, class certification, and other issues.

In addition, Judge Johnson appointed two special masters, Michael J. Duckor and Merville R. Thompson, to supervise discovery and mediation in all of the polybutylene cases. The special masters have conducted "dozens (if not hundreds) of discovery conferences." Motion to Remand at 5. Finally, the Superior Court has also set a trial schedule for the cases. The *Williams* class action was set for trial on January 5, 1995, and the trials in the other cases were set to follow at regular intervals thereafter.

Celanese's removal was effected pursuant to 28 U.S.C. § 1452[4] following a bankruptcy filing by co-defendant U.S. Brass ("Brass"). Although the pending state court actions were grounded in negligence, strict liability and fraud, Brass's bankruptcy was viewed by Celanese as sufficiently compelling to warrant removal of the entire mass tort litigation to federal court. Following removal, counsel for Williams indicated their intent to dismiss Brass from the action, and moved for remand. At the June 10 hearing, the motion to remand was joined by the remaining plaintiffs in the related actions.

The section 1452 removal by Celanese was the first step in an attempt to consolidate related, nationwide polybutylene litigation in a single, "home court:" the United States Bankruptcy Court for the Eastern District of Texas. Spearheading this effort, Defendant

---

**2.** To avoid complexity, the Williamses and parties joining the Williams' motion are addressed collectively using, in singular, "Williams." Similarly, "Celanese" refers to Hoechst Celanese Corporation and all parties joining Hoechst Celanese's motion to transfer.

**3.** In addition to those parties filing briefs in support of or in opposition to the motions to remand and the motions to transfer, a number of parties filed briefs in opposition to severing the cross-claims from the underlying actions.

**4.** Section 1452, providing for removal of claims related to bankruptcy cases, states:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452.

Celanese argues that only the "home court" can efficiently manage the voluminous litigation and orderly administer the Brass estate. In support of its motion, Celanese notes that 22 polybutylene-related actions were removed to "federal court" in Texas, and transferred to the United States Bankruptcy Court for the Eastern District of Texas for determination of pending motions to remand.

A significant number of co-defendants oppose Celanese's Motion to Transfer.[5] Notably, bankruptcy debtor and former co-defendant Brass opposes Celanese's motion to transfer California cases to Texas. Co-defendant Shell Oil Company ("Shell") filed a brief indicating that it takes no position on the motions to remand or transfer. Shell does, however, oppose severance of the cross-complaints from the underlying matter.

Williams contends, in the Motion to Remand, that Celanese's removal of the polybutylene litigation was improper under section 1452, and argues that Celanese's Motion to Transfer is not authorized under section 1412. Williams asks this Court to remand the litigation to state court.

## II. REMOVAL OF POLYBUTYLENE CASES TO FEDERAL COURT

Section 1452[6] authorizes removal of claims only when the target court has subject matter jurisdiction under 28 U.S.C. § 1334. Section 1334 states:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases **under title 11.**

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings **arising under title 11, or arising in or related to cases under title 11.**

28 U.S.C. 1334 (emphasis added).

### A. Application of Section 1334

Section 1334 sets forth four possible grounds for jurisdiction in federal court. First, the district courts have exclusive jurisdiction over all bankruptcy cases "under title 11" of the United States Code. "Under title 11" refers to bankruptcy proceedings. *In re Wood*, 825 F.2d 90, 92 (5th Cir.1987). The second and third grounds involve core proceedings "arising under" title 11 or "arising in a case under" title 11. These are causes of action which are expressly created by title 11. *In re S & M Constructors, Inc.*, 144 B.R. 855, 859 (Bkrtcy.W.D.Mo.1992). The state court actions removed by Celanese charge Defendants with negligence, strict liability and fraud. The claims against Celanese were filed prior to Brass's petition for bankruptcy, exist independently of bankruptcy law, and thus, fall within none of these categories.

Fourth, district courts have jurisdiction over matters which are "related to" a bankruptcy proceeding. The test for deciding whether a civil proceeding is "related to" bankruptcy is "whether the outcome of the proceeding could conceivably have any effect on the estate being administered." *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988) (Thompson, J., adopting, without limitation, the test set out by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984)). In *Fietz*, the Ninth Circuit found that a defendant's cross-claim could not conceivably have affected the administration of the bankruptcy estate because it was filed after the Chapter 13 bankruptcy plan was confirmed.

### B. "Related To" Analysis

Williams, having moved to dismiss Brass from much of the litigation, argues that the current scope of the instant polybutylene liti-

---

**5.** Defendants opposing Celanese's Motion to Transfer include: Western Plastic, Norland Plastics, Rancho Bernardo Development and Christopher Homes.

**6.** Under the relevant provision:

A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

gation involves only nondebtors, and the outcome of the litigation "will not impact the U.S. Brass bankruptcy proceeding." (Pls. Mem. of P. & A. in Opp'n to Hoechst Celanese Corporation's Mot. to Transfer Cases to Texas at 2).

However, on March 22, 1989, Defendants Celanese and Shell executed an agreement, entitled "Sharing Agreement," with then-Defendant Brass for the purpose of apportioning the payment of settlements and judgments entered against any and each of Celanese, Shell, or Brass resulting from the polybutylene plumbing litigation. The Sharing Agreement, signed by Brass's president, a vice president of Celanese and a general manager of Shell, states:

> The Parties [Celanese, Shell and Brass] agree that future ... judgments shared among the three of them pursuant to the terms of this Agreement will be shared in the following percentages: U.S. Brass = 70% Hoechst Celanese = 20.5% Shell = 9.5% ... applied to the total of all damages and interest awarded against the Parties.... All cases in which a complaint has been filed in a court of law and served on at least one of the Parties on or before the Termination Date [March 22, 1994] shall be subject to the terms of this Agreement.... This Agreement shall be binding on the Parties hereto and their respective successors and assigns.

(Defs. Mem. in Supp. of Mot. to Transfer to United States Bankruptcy Ct. for the Eastern District of Texas ex. B). Celanese argues that the settlement agreement creates direct contractual claims enforceable against Brass's estate if and when polybutylene litigation results in any recovery against Defendant Celanese, Defendant Shell, or both.

The Ninth Circuit has found a civil proceeding "related to" a bankruptcy when the administration of a debtor's estate was potentially affected by enforcement of a state court judgment. *In re American Hardwoods, Inc.,* 885 F.2d 621, 624 (1989) (Wallace, C.J.). The nondebtor defendants in *American Hardwoods* held stock in the debtor corporation, and execution on the stock was foreseeable in the event the plaintiff creditor prevailed against nondebtors in its state court action. Because possible execution on the nondebtors' stock could affect the administration of the debtor company's estate, the matter was found to be "related to" the bankruptcy proceeding, and the bankruptcy court was held to have jurisdiction under 28 U.S.C. § 1334. *Id.* at 624.

The Celanese–Brass relationship is also similar in certain respects to the situation addressed by the Third Circuit in its seminal decision, *Pacor v. Higgins.* In *Pacor,* plaintiff Higgins filed a products liability action against Philadelphia Asbestos Co. (trading as "Pacor, Inc."). In response, Pacor filed a third-party complaint impleading the Johns–Manville Corporation, which Pacor claimed was the original manufacturer of the asbestos. Johns–Manville filed a chapter 11 petition in bankruptcy, and the Manville–Pacor action was severed from the Higgins–Pacor action.

■ Like Celanese, Pacor sought to remove the Higgins–Pacor action to federal court in order to transfer the action to the bankruptcy court administering the Manville proceeding. The *Pacor* Court found that the two proceedings were not sufficiently related to support federal jurisdiction. The *Pacor* court noted that:

> at best, [the Pacor–Higgins action] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins–Pacor action, it could not be bound by res judicata or collateral estoppel.

*Pacor,* 743 F.2d at 995. The analysis of the Ninth Circuit in *In re American Hardwoods,* and the Third Circuit in *Pacor* dictate that "related to" jurisdiction attaches only where cross-claims arising out of a civil action are directly, contractually linked to the bankrupt party.

## C. The Polybutylene Cases Are Related To the Bankruptcy Proceedings

■ While the instant case is procedurally similar to the actions at issue in *Pacor,* there

are two important differences which persuade the Court that these matters are sufficiently "related to" the U.S. Brass bankruptcy proceeding to support jurisdiction.

First, the two matters have not yet been severed by the State Court [7] and at this point remain part of the same proceeding. Secondly, unlike the defendants in *Pacor*, Brass and Celanese have entered into a sharing agreement by which Brass agreed, prior to bankruptcy, to indemnify Shell and Celanese.

The sharing agreement is currently the subject of litigation. To the extent any plaintiff prevails on any of the claims lodged against Defendant Celanese, Defendant Shell, or both, the administration of Brass's estate will undoubtedly be affected by enforcement of the Sharing Agreement against U.S. Brass. The fact that Celanese and Shell will conceivably become contract creditors of the Brass estate based solely on the outcome of the polybutylene litigation establishes a sufficient nexus to find that the polybutylene litigation is "related to" the U.S. Brass bankruptcy. Therefore, this Court has jurisdiction over the removed claims under section 1334 subsection b.

## III. REMAND TO SUPERIOR COURT

■ Williams argues that even if removal of polybutylene litigation was proper under section 1452, the Court should remand the actions to Superior Court. Under section 1452, subsection (b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." As such, even where federal jurisdiction attaches in actions "related to" bankruptcy proceedings, Congress has explicitly provided for courts to find that those matters are more properly adjudicated in state court.

Williams's arguments in favor of remand are two-fold. First, Williams argues that the

Court is statutorily required to remand the cases under the mandatory abstention provisions set out in 28 U.S.C. § 1334(c)(2). Second, Williams contends that equitable considerations which strongly favor allowing the Superior Court to continue exercising jurisdiction here in San Diego.

### A. The Mandatory Abstention Doctrine Applies To Cases Removed from State Court

■ Celanese vigorously contends that abstention does not apply in the instant case because "abstention has no applicability to removed actions." (Reply Mem. of P. & A. in Further Supp. of Hoechst Celanese's Mot. to Transfer at 10). In support of this position, Celanese cites "controlling law." While the Court concedes that some of the authority Celanese cites does indeed adopt the position that section 1334(c) does not apply to removed actions, those cases are limited primarily to Texas bankruptcy court decisions. *See, e.g., In re Branded Products, Inc.*, 154 B.R. 936, 938–44 (Bankr.W.D.Tex.1993). Celanese cites one Ninth Circuit authority in support of this view, *In re Princess Louise Corp.*, 77 B.R. 766, 771–72 (Bankr.C.D.Cal. 1987). Inexplicably, *In re Princess Louise Corp.* does not address the application of mandatory abstention to removed cases.[8]

The majority position is that mandatory abstention is applicable to removed cases. *See, e.g. Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 584 n. 3 (6th Cir.1990) (Sixth Circuit holding that "abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452," and noting that not every case should be tried in the bankruptcy court, particularly if purely state law issues are involved); *In re Marathon Home Loans*, 96 B.R. 296, 301 (E.D.Cal.1989) (finding that mandatory abstention is a limit on removal and appropriate when motion for remand

---

7. The Court notes that this order should not be read to preclude a subsequent severance of these matters by the state court judge. Nor should this matter preclude removal of the severed action to federal court, should the parties determine that such removal is desirable.

8. The *Princess Louise* court observed that the sole remedy of a party alleging improper removal

of state claims is to move the federal court to remand. *Princess Louise*, 77 B.R. at 771–72. This view, however, merely confirms the propriety of Williams's Motion to Remand and, in fact, supports the Court's view that mandatory abstention in favor of state court jurisdiction applies to removed cases.

puts the concepts underlying abstention in issue); *In re Jasperson,* 116 B.R. 740, 746 (Bankr.S.D.Cal.1990) (Hargrove, J., applying § 1334(c)(2) to remand a removed state court complaint when elements of mandatory abstention were present).

Authority cited by Celanese, *In re Branded Products, Inc.,* 154 B.R. 936, 939 (Bankr. W.D.Tex.1993); *In re AK Servs., Inc.,* 159 B.R. 76, 83–84 (Bankr.D.Mass.1993); *In re 666 Associates,* 57 B.R. 8, 11 (Bankr.S.D.N.Y. 1985), posits that mandatory abstention is inapplicable to removed claims. In *Branded Products,* the Bankruptcy Court for the Western District of Texas declined to entertain a motion to abstain brought by a creditor whose year-old state court claims were removed to bankruptcy court by the debtor who, two weeks prior, had filed for chapter 11 relief. The *Branded Products* court reasoned that abstention, when applied to a removed claim absent a motion to remand, constitutes a dismissal which leaves no claim to go forward:

> federal courts do not effectively respond to removed cases by abstaining from hearing the case, for that would not send the case back to state court.... Invoking abstention in the context of a removed case would result (in the usual case) in eliminating the lawsuit.

*Id.* at 940. The *Branded Products* opinion makes much of Congress's "legal error" in legislating section 1334(c)(2). *Id.* at 942. The *Branded Products* court found that applying mandatory abstention to removed cases deprives the parties of a forum and "re-institutes the same summary/plenary distinctions and piecemeal litigation that the Bankruptcy Reform Act of 1978 was designed to eliminate." 154 B.R. at 939–43. For the reasons stated below, the Court is unpersuaded by this reasoning.

Section 1334(c) was amended following the United States Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon,* Northern Pipeline filed a petition to reorganize with the U.S. Bankruptcy Court for the District of Minnesota. Three months later, in the same bankruptcy court, Northern Pipeline initiated

a suit against Marathon Pipe seeking damages for breach of contract, misrepresentation, coercion and duress. *Id.* at 56, 102 S.Ct. at 2864. Although the bankruptcy court denied Marathon Pipe's motion to dismiss, the district court granted the motion on appeal, finding the bankruptcy court's jurisdiction unconstitutionally overbroad. *Id.* at 57, 102 S.Ct. at 2864. Writing for the *Marathon* majority, Justice Brennan affirmed the district court's dismissal and held that 28 U.S.C. § 1471 (predecessor to section 1334) impermissibly vested "essential attributes of the judicial power" in bankruptcy courts and that the Constitution did not authorize Congress to inject such broad jurisdiction in Article I courts. *Id.* at 87, 102 S.Ct. at 2880.

The *Branded Products* court observed that the holding in *Marathon* was limited to Article I courts and opined, therefore, that it was unnecessary for Congress to restrict the jurisdiction of Article III courts by enacting section 1334(c)(2). *Branded Products,* 154 B.R. at 943–44. However, the constitutional question raised in Marathon was not the sole motivation for Congress's action.

A Congressional memorandum issued during the amendment process explains that mandatory abstention avoids federal adjudication of "state-based causes of action where there is no basis for federal jurisdiction" and further notes that:

> allocation of responsibility between the federal and state judiciary (10th Amendment) also supports mandatory abstention.... [W]ithout mandatory abstention the district courts, already overburdened with judicial responsibility, would have a massive influx of additional cases requiring the district courts to adjudicate all of the state court actions with only limited assistance from bankruptcy judges.... Mandatory abstention for all such adjudications of state-created actions that would otherwise be in a state forum, would prevent this unanticipated case load burden on the district courts.

130 Cong. Rec. S8896 (daily ed. June 29, 1984) (memorandum of Senator Hatch supporting enactment of section 1334(c)(2)).

The Congressional Record illustrates that section 1334(c)(2)'s mandatory abstention was never regarded as a dismissal device. Rather, the mandatory abstention provision sets out explicit conditions in which federal courts, otherwise possessed of jurisdiction, must refuse to hear claims in favor of state court adjudication.

■ Indeed, mandatory abstention applies only to claims already commenced in state court and which can be timely adjudicated in state court. Senator DeConcini, illustrating limitations attaching to abstention, commented that:

abstaining where timely State court adjudication will take place will not normally threaten the administration of. the bankruptcy case.... [However a] bankruptcy court, for example, sitting in Kansas which receives a claim based on a note that is to be construed under Illinois law will, of course, apply Illinois law ... But forcing abstention from resolution of that dispute *by referring the proceeding to an Illinois State court* would impose enormous administrative costs and delays.

130 Cong. Rec. 17154 (June 19, 1984). The above illustration demonstrates Congress's understanding that mandatory abstention presumes state court adjudication.

The *Branded Products* interpretation of section 1334(c) is both hypertechnical and untenable. More importantly, such an interpretation ignores the stated intent of Congress. To adopt such a conception of the abstention doctrine, irrespective of its context, is to place form before function.

### B. This Case Satisfies the Elements for Mandatory Abstention

■ Under section 1334, a court is required to abstain from hearing a motion when the following six elements are present: (1) a party files a timely motion; (2) the proceeding is based on a state law claim or cause of action; (3) the matter is "related to" a case under chapter 11 (and is not a proceeding "arising under" title 11 or "arising in" a case under title 11); (4) the action could not have been commenced in federal court absent bankruptcy; (5) a state court action has been commenced; and (6) the state court action can be timely adjudicated. *Nationwide Roofing & Sheet Metal v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal)*, 130 B.R. 768, 778 (Bankr.S.D.Ohio 1991). *See also* **Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial,** ¶¶ 2.846.1–2.846.11 (1989).

■ The Court finds that all six of these elements are met in this case. (1) The motion for remand was filed two days after removal. (2) Only state law causes of action are involved (negligence, strict liability and fraud). (3) The removed claims are "related to" a case arising under title 11, and the claims do not arise under title 11 or arise in a case under title 11 (*see* discussion *supra*). (4) But for jurisdiction arising from the bankruptcy under section 1334, this Court has no jurisdiction over the removed claims, and the removed claims could not have been commenced in this Court. (5) The removed claims have been commenced in state court and (6) can be timely adjudicated there: they have been set on a well-planned discovery and motion schedule, have been placed on a trial calendar and are overseen by one judge and two special masters who have substantial familiarity with the cases and the issues.

All six of the relevant considerations under the doctrine of mandatory abstention are satisfied. The Court is therefore required to abstain from these matters in favor of state court jurisdiction.

### C. Equitable Considerations Require Remand to State Court

Quite apart from its obligation to abstain under section 1334(c)(2), a federal court has discretionary power to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law" under 28 U.S.C. § 1334(c)(1). **Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial,** ¶ 2.846.11 (1989). Pursuant to section 1452(b), a court may remand on "any equitable ground."

■ Among the factors a court should consider in deciding whether to remand are: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent

to which the issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to jury trial; and (7) prejudice to the party involuntarily removed from state court. *In re Videocart, Inc.*, 165 B.R. 740 (Bankr.D.Mass.1994); *Browning v. Navarro*, 743 F.2d 1069, 1076 n. 21 (5th cir.), *reh'g denied en banc*, 747 F.2d 1465 (5th Cir.1984); *Fedders North Amer., Inc. v. Branded Products, Inc.*, 154 B.R. 936, 937 (Bankr.W.D.Tex.1993).

*1. Consolidation of these actions will have a negative effect on the administration of the bankruptcy estate.*

Debtor U.S. Brass filed a brief on June 22, 1994, arguing that "[n]o practical or equitable reason exists for the transfer of the San Diego cases to the United States Bankruptcy Court for the Eastern District of Texas where the chapter 11 case of U.S. Brass is pending ..." (Mem. in Supp. of Mot. to Remand Cases at 1). Brass contends that "[b]urdening the Texas Bankruptcy Court with complex multiple party products liability litigation can only unduly delay [Brass's] reorganization efforts." *Id.*

In addition, Brass notes that contrary to the representations of Celanese, it did not join in the removal of the cases to federal court. The only matters which Brass sought to have transferred to the Texas bankruptcy court were (1) the litigation initiated by Shell and Celanese in the New Jersey state courts with regard to the alleged indemnity obligations of U.S. Brass; and (2) the litigation in the Illinois state courts between U.S. Brass and its insurers regarding the insurers' obligation respecting certain U.S. Brass liabilities. *Id.* at 3.

Given the arguments made by the debtor, U.S. Brass, the Court is persuaded that these actions would unduly burden the administration of the bankruptcy estate.

*2. State law issues dominate.*

As discussed above, the polybutylene claims involve actions for strict liability, negligence, fraud, negligent misrepresentation, and violation of California Business and Professions Code § 17200. All of these claims present issues of state law only, and there are no issues of federal law in any of Plaintiffs' claims.

*3. Applicable state law is complex.*

While the Court notes that strict liability law and negligence law are not inherently complex, the number of plaintiffs, defendants, and individual claims add a large degree of complexity to this case. The fact that the state court judge has already handled several trials and settlements in polybutylene matters qualifies the state court as the forum which can most efficiently adjudicate San Diego's polybutylene plumbing litigation on a class action scale.

*4. Considerations of comity support remand.*

As noted above, the state court has devoted significant resources to the coordination and adjudication of the polybutylene cases. To divest Judge Johnson and two special masters of jurisdiction at this late date would constitute a wasteful duplication of court time and resources.

Furthermore, all of the hundreds of plaintiffs involved in these cases reside here in San Diego. The evidence, consisting in part of the allegedly defective local houses, is here in San Diego. These California concerns are properly adjudicated in California courts.

*5. The actions are remotely related to the bankruptcy case.*

Plaintiffs have dismissed Brass as a defendant. As such, the only connection the pending cases have to the bankruptcy proceeding is the cross-complaints for contribution and indemnity filed by Celanese, Shell and other defendants against U.S. Brass.

The Sharing Agreement between Shell, Celanese and Brass is the subject of a separate action filed in New Jersey which has been removed to the Texas bankruptcy court. As Brass notes in its papers, any liability arising from the Sharing Agreement will be addressed in that proceeding. As such, the polybutylene cases are only remotely related to the bankruptcy proceeding.

6. *Plaintiffs have a right to a jury trial.*

This Court has previously addressed the issue of whether bankruptcy courts may conduct jury trials in non-core matters. *See In re Cinematronics, Inc.,* 111 B.R. 902 (S.D.Cal.1990) (Rhoades, J.) (holding that bankruptcy courts may hold jury trials in cases involving core issues). The matter was certified for interlocutory appeal, and the Ninth Circuit reversed the bankruptcy court's finding that the claims were "core issues." *In re Cinematronics,* 916 F.2d 1444 (9th Cir.1990). The Ninth Circuit held that plaintiffs have a constitutional right to a jury trial in district court in non-core matters. *Id.*

Williams and the other polybutylene plaintiffs are clearly entitled to a jury trial on their defect claims. As such, if the actions were transferred to the Texas bankruptcy court, they would have to be subsequently transferred to a district court for trial. Transporting the extensive records in these cases to Texas is, itself, a Herculean task. The Court questions the wisdom of such an expensive and time-consuming transfer when, just across the street, there is an experienced judge, two special masters, and a courthouse with jurisdiction to hear this matter.

7. *Plaintiffs are greatly prejudiced by removal.*

Finally, the plaintiffs in this case are vigorously opposing removal due to the prejudice they will suffer if the case is transferred to Texas. All of the lawyers in this case, with few exceptions, are local counsel. The evidence is local. The plaintiffs reside locally. Litigating the case in Texas would require expensive and time-consuming travel from San Diego to Texas. In addition, the case has been progressing in state court, and transfer will undeniably result in delay.

The Court finds that all of the elements of mandatory abstention under 28 U.S.C. § 1334(c)(2) are satisfied in this case, thereby requiring abstention by this Court. In addition, the Court finds for the reasons listed above, that good cause exists for remanding the actions to state court pursuant to 28 U.S.C. 1452(b).[9]

## IV. CONCLUSION

For the reasons stated above, the motions to remand are GRANTED, and the motions to transfer venue are DENIED.

IT IS SO ORDERED.

---

9. In light of this determination, the Court need not reach the parties' arguments regarding the correctness of a transfer of venue under 28 U.S.C. section 1412, or section 1404.