In re John Alsop HAYES and
Iola Iris Hayes, Debtors.

Rhode Island Depositors Economic Pro-
tection Corp., Plaintiff/Appellant,

v.

John Alsop Hayes and Iola Iris Hayes,
Defendants/Appellees.

BAP No. MB 98–049.

United States Bankruptcy Appellate Panel
for the First Circuit.

Jan. 29, 1999.

Robert L. Hamer, Paul W. Carey, Mirick, O'Connell, DeMallie & Lougee, LLP, Worcester, MA, for Rhode Island Depositors Economic Protection Corporation, plaintiff-appellant.

1. Unless otherwise indicated, citations to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq*.

2. The court determined that the debtors had fraudulently transferred their Newton, Massachusetts, residence to the 21 Wamesit Trust, and avoided the transfer pursuant to Code § 544 and

Donald R. Lassman, Kassler & Freuer, Boston, MA, for John Alsop Hayes, defendant-appellee.

John F. Davis, Boudreau, Mitchell & Davis, Andover, MA, for Iola Iris Hayes, defendant-appellee.

Before LAMOUTTE, DE JESÚS and HAINES, U.S. Bankruptcy Judges.

HAINES, Bankruptcy Judge.

Rhode Island Depositors Economic Protection Corporation ("DEPCO") appeals from the bankruptcy court's entry of judgment in favor of Chapter 7 Debtors John and Iola Hayes on DEPCO's complaint objecting to the Hayeses' discharge pursuant to Bankruptcy Code § 727(a)(2)(A).[1] For the reasons set forth below, we reverse.

### Appellate Jurisdiction

The bankruptcy court's judgment is a final judgment over which we exercise appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) and § 158(b).

### Background

#### 1. Procedure

John and Iola Hayes filed for relief under Chapter 7 on April 30, 1996. DEPCO, which had sought for years to collect amounts owing it by the Hayeses as guarantors of the liabilities of a failed real estate development, filed its complaint objecting to their looming Chapter 7 discharge on November 1, 1996. Consolidating DEPCO's action with the Chapter 7 trustee's action to avoid a fraudulent conveyance, the court convened a multi-day trial in late 1997. Ultimately, the court entered judgment for the trustee,[2] but determined that the debtors' discharge was not barred by § 727(a)(2)(A). DEPCO's appeal ensued.

#### 2. Facts[3]

In December 1987 Dr. and Mrs. Hayes became limited partners in Cedar Hill Devel-

Massachusetts General Laws ch. 109A, §§ 4 and 7, bringing the residence back into the estate for the benefit of the Hayeses' creditors. *See* § 550.

3. Our factual recitation is drawn from the bankruptcy court's memorandum of decision filed June 18, 1998, set forth in the Appellant's Appendix, commencing at page 188. Additional uncontested facts are drawn from the Appellant's

opment, L.P., an enterprise devoted to developing real estate in Jamestown, Rhode Island. The Marquette Credit Union loaned funds for the project. Early in the same month the Hayeses executed unlimited, joint and several guaranties of the partnership's loan obligations to Marquette.[4]

By early 1989, Cedar Hill's project was failing. Although they entertained notions of effective defenses, the Hayeses soon realized that they faced potential personal liability to Marquette exceeding $1,000,000. Through 1989 and 1990, as the matter grew more pressing, Dr. Hayes and his counsel discussed using "cash to forestall" Marquette's collection efforts and "get[ting] rid of assets" in hopes of, among other things, leveraging a favorable settlement.

On October 24, 1990, Marquette demanded that Dr. and Mrs. Hayes submit a proposal to settle their guaranty obligation by November 12, 1990. Marquette extended the deadline to December 6, 1990, then to January 7, 1991.

In a November 20, 1990, letter to the Hayeses, their attorney suggested "the possibility of diverting assets" to place them beyond the reach of their creditors. Whatever might be said about the quality of that advice, Dr. and Mrs. Hayes took it—wholeheartedly. In January 1991 they transferred their Newton, Massachusetts, residence to their son David Christian Hayes, as trustee of the 21 Wamesit Road Realty Trust. They transferred their 5/6 interest in a Quincy, Massachusetts, apartment building to David as trustee of the 105 Alstead Street Realty Trust. The trusts were established ostensibly for the benefit of the Hayeses' children. The transfers were without consideration, although documentation for the residence's transfer created the false impression that $170,000 was paid. The Hayeses executed a sham lease with the 21 Wamesit Trust, under which they purported to pay rent to continue to reside at their home.

Following the 21 Wamesit transfer, the Hayeses continued to pay the property's mortgage, real estate taxes, and utility charges. In February 1991 they applied for a loan from Pioneer Financial, to be secured by a mortgage on 21 Wamesit. They represented that they owned that property, as well as the Quincy apartment building, outright. At his parents' request, David Hayes, as trustee, granted Pioneer a mortgage on 21 Wamesit, thereby enabling them to borrow funds for improvements to the property and for defense or compromise of their guaranty obligations. (Appellant App. at 87–91; Tr. at 146–47.)

Over time, DEPCO succeeded Marquette; DEPCO foreclosed on the Cedar Hill project; and DEPCO obtained a deficiency judgment against the Hayeses in the amount of $2,029,-690.

In 1993, and again in January 1995, the Hayeses each submitted affidavits of financial condition to DEPCO. (Appellant App. at 125, 151; Rec. Item 13 Exs. 33, 34.) In each case they represented that they held no interest in the 21 Wamesit real estate and that they held no beneficial interests in any trust. They also represented that their 1991 transfers to the trusts were absolute. The income and expense statements accompanying their affidavits indicated they made no mortgage payments for 21 Wamesit, only that they paid rent.

In June 1994 DEPCO brought suit seeking to avoid the Hayeses' transfer of the Quincy apartment building to the 105 Alstead Street Realty Trust. (Appellant App. at 148–49, 192–93.) That action was quickly resolved by an agreement under which David Hayes transferred the property back to his parents so that it could be sold, with the proceeds going to DEPCO. (*Id.*)

In an affidavit he filed on November 22, 1995, in a subsequent DEPCO suit, Dr. Hayes disclosed the 1991 transfers into trust, but stated that although the 105 Alstead property had been transferred subject to the

---

Appendix and the Record on Appeal and are cited accordingly.

**4.** Dr. and Mrs. Hayes have contended that Marquette obtained their guaranties under circum-

stances rendering them unenforceable. Such issues, long ago resolved against them, are not germane to the present dispute.

Hayeses' ability to reach its equity to pay DEPCO's claims, the 21 Wamesit property had been transferred to trust without limitation. (Appellant App. at 180–85.)

On August 4, 1995, again acting at his parents' request and without protest, David Hayes granted Attorney Mark Stull a mortgage on 21 Wamesit to secure Stull's accrued and future legal fees generated in the Hayeses' defense of DEPCO's claims. (Appellant App. at 160.)

At about the same time, the Hayeses and DEPCO were conducting continuing settlement discussions. Among DEPCO's demands was its insistence that it be granted a mortgage on 21 Wamesit to secure its enduring deficiency claim. Attorney Stull wrote to DEPCO on August 29, 1995, explaining that David Hayes, as trustee, had refused to grant such a mortgage. (Rec. Item 45.) In fact, however, David had never disputed DEPCO's right to the mortgage and had not refused the demand. (Appellant App. at 93–99.)

Dr. and Mrs. Hayes filed their voluntary petition for Chapter 7 relief on April 30, 1996. Their schedules disclosed no retained interest in the 21 Wamesit real estate or in the trust, (Rec. Item 2); Attorney Stull was listed (accurately) as a creditor holding a mortgage on certain Rhode Island real estate, but there was no mention of the 21 Wamesit mortgage granted him in August 1995, (id.); and the debtors' statement of affairs did not disclose the August 1995 mortgage to Stull. (Rec. Item 1.) The Hayeses listed Pioneer Financial's successor, BancBoston Mortgage Co., as an *unsecured* creditor with a notation, "PROMISSORY NOTE—21 WAMESIT RD., WABAN, MA," (Rec. Item 2), and amended their schedules to show David Hayes, "Trustee, 21 Wamesit Street Trust" as a co-debtor on the BancBoston obligation. (Rec. Item 3.)

### 3. DEPCO's Objection to Discharge

#### a. The Complaint

In support of its claim that the Hayeses' discharge should be denied, DEPCO alleged that within weeks of its demand for payment, the Hayeses "purported" to convey title of 21 Wamesit to David as trustee. It asserted that, notwithstanding the purported transfer, the Hayeses continued to use and maintain the property—paying the mortgage, taxes, and insurance—and that in August 1995 David granted a mortgage to Attorney Stull at the Hayeses' direction. DEPCO alleged that the Hayeses had concealed their interest in the 21 Wamesit property and that the purpose of the concealment was to defraud their creditors in general and DEPCO in particular. Finally, DEPCO alleged that the Hayeses' concealment, which commenced in 1991, continued to within the year preceding their bankruptcy filing.

#### b. The Answer

In response to DEPCO's allegations, the Hayeses affirmatively asserted that in 1991 they *did* convey 21 Wamesit into trust and expressly "den[ied]" that they have concealed an interest" in the real estate. They further denied having caused David to pledge 21 Wamesit's equity to Attorney Stull to secure his claims for legal fees.

#### c. The Decision Below

DEPCO's complaint invoked § 727(a)(2)(A), which provides that, "[t]he court shall grant the debtor a discharge, unless,"

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition.

§ 727(a)(2)(A).

The bankruptcy court found, *inter alia,* that the Hayeses transferred 21 Wamesit into trust in January 1991, but had retained equitable ownership of the property, with actual intent to "delay, hinder or defraud" their creditors. That was enough to avoid

the transfer under Code § 544 and Massachusetts law.[5]

The court determined that the Hayeses were entitled to their discharge, nonetheless, holding that DEPCO had not proved the debtors' concealment of property within one year of bankruptcy. Defining concealment for the purposes of § 727(a)(2)(A), the court quoted this definition: "hiding or withdrawing property from observation, preventing the discovery of property or withholding knowledge of the existence, ownership or location of property." *In re McIsaac,* 19 B.R. 391, 396 (Bankr.D.Mass.1982) (defining "concealment," an act of bankruptcy upon which an involuntary petition could be predicated, under § 3(a) of the Bankruptcy Act). It held that real estate interests may be "concealed" within the meaning of § 727(a)(2)(A) even if they are reflected in public records. The court also recognized the doctrine of "continuing concealment," under which a transfer of an asset more than one year before bankruptcy, coupled with ongoing retention of a secret interest in the asset, may constitute a "continuing concealment" extending into § 727(a)(2)(A)'s critical one-year pre-bankruptcy period. Its analysis continued to the following pivotal passage:

> However, the retention of a beneficial interest in an asset that has been transferred does not necessitate [a] finding of a continuing concealment. *In re Mac-Donald,* 114 B.R. 326, 334 (D.Mass.1990). In *MacDonald,* the district court reversed a bankruptcy court's denial of the debtor's discharge where the debtor's control of a corporation and transfer of stock to his father were fully revealed. Thus, a number of courts have ruled that where the details of the transfer and retention of the asset were made known to creditors prior to bankruptcy, no concealment for the purposes of § 727(a)(2)(A) has occurred. *See In re Wolmer,* 57 B.R. 128, 132 (Bankr. N.D.Ill.1986); *In re Herron,* 49 B.R. at 35.

In the present case, there is no dispute that the fraudulent transfer was made more than five years prior to the filing of the bankruptcy petition, outside the one year reach back period of § 727(a)(2)(A).

However, the Debtors continued to retain an interest in the Newton property after the fraudulent conveyance on January 22, 1991; they continued to live there, treating the property and its equity as their own in every respect by paying all expenses and pledging it as collateral. Nevertheless, the Debtors' fraudulent transfer and retention of the equitable interest in the property were not secret. DEPCO had actual knowledge of the transfer long before the bankruptcy case. The Hayeses disclosed the details of the transfer of the Newton property to DEPCO several years prior to the filing of the bankruptcy petition in financial statements submitted to it in 1993 and 1995 in connection with proposals to settle the Marquette deficiency claim.

Moreover, in August of 1995, DEPCO commenced an action against the Debtors alleging a fraudulent conveyance of the Newton property. Although the Debtors filed an answer denying the fraudulent conveyance, DEPCO cannot claim that it could not have protected its rights when it in fact knew of and sought avoidance of the transfer. DEPCO also did not present any evidence that the Debtors concealed the transfer or their interest in the Newton property from other creditors within the year prior to the filing of their bankruptcy petition. Speculation that other creditors may not have been aware of the Debtors' interest does not satisfy DEPCO's burden that the property was concealed within a year of bankruptcy. The Court notes that neither the Trustee nor any other creditor has brought an action to deny the discharge. The Court concludes that DEPCO failed to sustain its burden of proof under 11 U.S.C. § 727(a)(2)(A) by proving improper intent within the statutory period. Accordingly, the Debtors are entitled to a discharge.

(Mem. Decision at 20–21; Appellant App. at 206–07.)

## *Discussion*

### 1. *Scope of Review*

Before reviewing the bankruptcy court's decision we must determine the extent of our

---

5. *See supra* note 2.

review. The parties before us are poles apart on the point. The Hayeses argue we can go no further than to determine that the court's factual findings are not clearly erroneous; DEPCO urges us to review the decision below *de novo*.

■ The mill run rule is simply stated: We review factual findings under the clearly erroneous standard; we review legal conclusions *de novo*. *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107 (1st Cir.1997); *Martin v. Bajgar (In re Bajgar)*, 104 F.3d 495, 497 (1st Cir.1997); *Grella v. Salem Five Cent Savs. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 495 (1st Cir. BAP 1997).

The Hayeses point to the first page of DEPCO's brief, where it "accepts, for purposes of this appeal, the factual finding[s] in the Bankruptcy Court's Order from which this appeal is taken." They then refer us to the following "finding":

> Nevertheless, the Debtor's fraudulent transfer and retention of the equitable interest in the property were not secret. DEPCO had actual knowledge of the transfer long before the bankruptcy case. The Hayeses disclosed the details of the transfer of the Newton property to DEPCO several years prior to the filing of the bankruptcy petition in financial statements submitted to it in 1993 and 1995 in connection with proposals to settle the Marquette deficiency claim.

They contend that we may not disturb the bankruptcy court's judgment unless there is insufficient evidence in the record to support, directly or inferentially, that "finding."

DEPCO asserts that the factual findings underlying the bankruptcy court's judgment are not at issue. Rather, it takes issue only with the court's conclusion that it had not demonstrated that the Hayeses fraudulently "concealed" property from creditors within

one year of their bankruptcy. That legal conclusion, it contends, is subject to plenary review. We agree.

■ The bankruptcy court determined that the Hayeses' conduct in the year preceding bankruptcy did not bar their discharge because DEPCO knew years earlier that they had transferred property into trust and it did not accept the *bona fides* of that transfer. The court concluded that the Hayeses' actions in the year preceding bankruptcy did not amount to "concealment" within § 727(a)(2)(A)'s ambit. That conclusion necessarily turned on the meaning of § 727(a)(2)(A)'s terms, which set the boundaries of its discharge-barring proscriptions. Thus, we have no trouble identifying the issue before us as a legal, not a factual one. *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 500–01, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (observing that an appellate court has a "duty to exercise independent review," rather than a review for clear error, when called upon to "correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law"); *Wessmann v. Gittens*, 160 F.3d 790, 795 (1st Cir.1998) ("essentially plenary" review of district court findings and conclusions as to whether efforts to promote diversity and cure vestiges of past discrimination satisfied the strict scrutiny standard under the equal protection clause because the issues were "questions of law or questions about how the law applies to discerned facts"); *Uno v. City of Holyoke*, 72 F.3d 973, 978 (1st Cir.1995) ("[c]onsidering asserted errors of law," be they connected to a mixed finding of law and fact or a finding of fact arising from a misunderstanding of the governing law, "entails nondeferential review.").[6] Indeed, one might characterize the question raised by this appeal as whether, to support a § 727(a)(2)(A) discharge objection, a debtor's concealment of property (enduring into the year preced-

---

6. Even were we to consider the issue a mixed question of law and fact, the nature of the inquiry would place it at the end of the law/fact spectrum calling for *de novo* review. *See Servicios Comerciales Andinos, S.A. v. General Electric Del Caribe, Inc.*, 145 F.3d 463, 469 (1st Cir.1998)

(mixed questions at law-dominated end of spectrum receive plenary review); *accord Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara County Child Care Consortium)*, 223 B.R. 40, 42 (1st Cir. BAP 1998).

ing bankruptcy) must be successful in deceiving creditors.

### 2. § 727(a)(2)(A) and "Concealment"

#### a. In General

 Section 727(a)(2)(A)'s bar to discharge comprehends four elements of preponderant proof:[7] (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) his or her property, (3) within one year of the bankruptcy petition's filing, (4) with the intent to hinder, delay, or defraud a creditor. *See In re Brown*, 108 F.3d at 1293; *accord Tastee Donuts, Inc. v. Bruno*, 169 B.R. 588, 591 (E.D.La.1994); *see also In re Maletta*, 159 B.R. at 115–16 ("[T]he plaintiff must show that the act: occurred within one year prior to the commencement of the case; was performed with actual intent to defraud a creditor or officer of the estate; was the act of the debtor or an agent of the debtor; and involved concealing, destroying, transferring, or removing any property of the debtor or permitting any of these acts to be done.").[8]

 Our decision turns on whether DEPCO proved a § 727(a)(2) act of concealment. That is: Did the Hayeses, within a year of bankruptcy, place assets beyond the reach of creditors or withhold knowledge of assets by failing or refusing to divulge information to which creditors were entitled? *See Marine Midland Bank v. Portnoy (In re Portnoy)*, 201 B.R. 685, 694 (Bankr.S.D.N.Y.1996); *PaineWebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 n. 6 (S.D.N.Y.1996); *see also In re Bottone*, 209 B.R. at 262 (the " 'withholding of something which one knows and which one, in duty, is bound to reveal,' "

quoting *Black's Law Dictionary* 289 (6th Ed.1990)); *see cf., United States v. Grant*, 971 F.2d 799, 807 (1st Cir.1992) ("The crime of concealment includes 'withhold[ing of] knowledge' or 'prevent[ing] disclosure *or recognition*,' " quoting *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir.1984)). "Concealment may be accomplished by a transfer of title coupled with the retention of the benefits of ownership." *In re Portnoy*, 201 B.R. at 694. *See also In re Maletta*, 159 B.R. at 116 ("Concealment of property under § 727(a)(2)(A) means that the debtor has transferred legal title to his property to a third party while retaining a secret interest."). We must determine whether DEPCO proved acts of concealment, within the meaning of § 727(a)(2)(A), undertaken with the requisite fraudulent intent, between May 1, 1995, and the Hayeses' April 30, 1996, petition date.

#### b. The "Continuing Concealment" Doctrine

Our discussion of concealment would not be complete without comment on the so-called doctrine of "continuing concealment." The doctrine has been sometimes employed by § 727(a)(2)(A) plaintiffs who cite debtors' historical fraudulent acts in their attempts to prove proscribed conduct within the year preceding bankruptcy.

The doctrine is most commonly invoked in circumstances similar to those before us—when a debtor, prior to the year before bankruptcy, has transferred property but has secretly held something back, and has concealed that secret interest in the months immediately preceding bankruptcy. *See e.g.,*

---

7. For § 727 objections to discharge, the substantive evidentiary standard of proof is preponderance of the evidence. *See Gillickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997); *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994); *Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 & n. 1 (6th Cir.1994); *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, (Bankr.D.Conn.1993); *see cf. Grogan v. Garner*, 498 U.S. 279, 289–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (concluding that the appropriate standard of proof for § 523(a) actions is by a preponderance and suggesting that it is the same under § 727).

8. Some courts have set out a two-point articulation of § 727(a)(2)(A)'s elements. *See e.g., Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997) (two elements: "a disposition of property" and "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property"); *see also Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993) (two components: "an act" and "an improper intent"); *Small v. Bottone (In re Bottone)*, 209 B.R. 257, 262 (Bankr.D.Mass.1997) (same). The shorthand rendition is substantively identical as applied, but we will employ the four-point approach to ensure we tag all bases.

*Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240–41 (9th Cir.1997) (upholding the denial of discharge where debtor granted a deed of trust to her mother more than one year before bankruptcy, but retained a secret interest in the property superior to her mother's); *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554–55 (5th Cir.1987) (transfer of residence to relative seven years before bankruptcy, intended to delay and defraud creditors, followed by continuing retention of secret interest, warranted discharge denial).

■■■■ Resort to the continuing concealment doctrine must be cautious to insure its invocation does not inappropriately short circuit the § 727(a)(2)(A) inquiry. *See e.g., Tastee Donuts, Inc.*, 169 B.R. at 592 (affirming bankruptcy court's judgment granting discharge, but describing continuing concealment as "the exception to the one-year rule"). Section 727(a)(2)(A) plaintiffs must prove that the requisite conduct, accompanied by the requisite intent, actually took place within the year preceding bankruptcy. *See Rosen*, 996 F.2d at 1531, 1533. Of course, conduct predating the critical year may provide circumstantial evidence of concealment activity and fraudulent intent within that year. *See In re Lawson*, 122 F.3d at 1240; *see also In re Bottone*, 209 B.R. at 262–63 (confessing "lack of reverence" for the doctrine, noting that it can result in inordinate focus on conduct that provides, at best, only circumstantial evidence of acts supporting a discharge objection).

### 3. *The Case at Hand*

#### a. *Secret Beneficial Property Interest Retained*

■■■ The Hayeses retained a " 'secret' beneficial property interest after conveying legal title to [21 Wamesit]." *In re Bottone*, 209 B.R. at 263. The bankruptcy court found that the Hayeses retained equitable ownership of the property, working the pseudo transfer in trust with actual intent to delay, hinder, or defraud their creditors and with

the expectation that their son would "hold the property for their exclusive benefit." [9]

The 21 Wamesit transaction—transfer of legal title to the trust for no consideration while continuing the status quo in all other respects—presents a classic example of desperate debtors' attempts to have their cake and eat it too, while denying any piece to pressing creditors. It is decorated with all the marks of the fraudulent retention of a secret property interest. *See e.g., In re Olivier*, 819 F.2d at 551 (continued residency, maintenance of, payment of insurance, and the absence of payments of rent to the transferee); *Friedell v. Kauffman (In re Kauffman)*, 675 F.2d 127, 128 (7th Cir.1987) (use of the property as collateral for loans and the payment of mortgage, insurance, and taxes indicative of a secret property interest under the Bankruptcy Act's substantive equivalent to § 727(a)(2)(A)); *Pelham Plate Glass Inc. v. Charette (In re Charette)*, 148 B.R. 94, 95–96 (Bankr.D.Mass.1992) (transfer to relative for one dollar in anticipation of a writ of attachment, while continuing to live in the property, make mortgage, tax and utility payments, and mow the lawn).

#### b. *Concealment Within a Year of Bankruptcy*

Although the Hayeses protest that the record discloses only an ancient transfer (well outside the one year § 727(a)(2)(A) period) and denials made in defense of fraudulent transfer claims (within one year of bankruptcy), we see things differently. The bankruptcy court's factual findings provide an extensive evidentiary recipe for deception and concealment within the year preceding bankruptcy.

To wit, Dr. Hayes filed an affidavit in state court in November 1995 asserting that he and his wife had transferred 21 Wamesit into trust without reservation. And, while the Hayeses represented to DEPCO that David's refusal to cooperate barred their pledging 21 Wamesit's equity as part of a settlement, they mined the value of their interest to secure payment of counsel fees (for counsel

---

9. In the lower court's words, the transfer was "in name only so that they could retain the status quo after the transfer and to continue to occupy it as their home." The Hayeses intended "to preserve their residence for themselves, not their children."

assisting them in disclaiming continued ownership of 21 Wamesit). The Hayeses' sworn bankruptcy schedules contain multiple averments that mask their retained interest in 21 Wamesit: Schedule A does not reveal any interest in 21 Wamesit; Schedule D discloses Attorney Stull's mortgage on Rhode Island real estate but not his mortgage on 21 Wamesit; the transfer to Attorney Stull was also not listed, as required, on their Statement of Affairs; and Schedule F lists BancBoston's, successor to Pioneer, as an unsecured note holder.[10]

█ Employing the sleight-of-hand that typifies transactions of this ilk, the Hayeses disclosed the transfer, but never acknowledged the interests they retained. The bankruptcy court erred in concluding that DEPCO's knowledge of the transfer (and, in this case, its subsequent attempts to contest the transfer's *bona fides*) defeated its § 727(a)(2)(A) objection to their discharge.[11] We consider that a correct application of § 727(a)(2)(A)'s concealment element must focus on debtor's wrongful conduct, rather than on the extent to which creditors are successfully misled. *See Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 569 (7th Cir.1989) ("The statute does not provide that the creditors must have, in fact, been hindered, delayed or defrauded"); *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986) ("[L]ack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy."). Only then will wrongful conduct consistently meet with § 727(A)(2)(A)'s prescribed consequence (discharge denial). We see no reason why dishonest debtors blessed with insightful creditors should fare better than those whose creditors are more obtuse.

Finally, today's holding is consistent with our circuit's *In re Bajgar* decision. *See In re Bajgar*, 104 F.3d 495. There the debtor, Bajgar, admitted transferring property to his wife, within a year of bankruptcy, with the intent to hinder, delay, or defraud his creditors. He defended the objection to discharge action on the basis that, post-bankruptcy, he obtained a reconveyance of the property for the benefit of the bankruptcy estate. Nevertheless, the circuit court held that, having wrongfully transferred property within a year of bankruptcy, Bajgar's subsequent contrition and reparation was of no avail. His discharge was denied. *See* 104 F.3d at 502.

The Hayeses unflinchingly denied they held any beneficial interests in 21 Wamesit both before and after their bankruptcy filing. Their fraud was inartful and enduring. They remained unrepentant until the end, putting DEPCO (and the court) through the expense and delay of trial. It would be perverse if they received a discharge when Bajgar, who admitted his wrongdoing and set it right, was denied the same.

### c. Intent to Hinder, Delay, or Defraud

The lower court's conclusion that DEPCO's knowledge of and challenge to the 1991 transfer defeated its § 727(a)(2)(A) objection deflected it from reaching the question whether the Hayeses acted with fraudulent intent within the year preceding their bankruptcy. Although the bankruptcy court made no determination on this factual question, remand is not required because "the

---

10. The Hayeses denied they held beneficial interests in 21 Wamesit up through the court's order on the Trustee's § 544 complaint. Inexplicably, DEPCO did not pursue an objection to discharge founded on § 727(a)(4)(A) (false oaths).

11. The bankruptcy court relied principally on *In re MacDonald*, 114 B.R. 326 (D.Mass.1990). There, the district court reversed the bankruptcy court's denial of discharge pursuant to § 727(a)(2)(A). *In re MacDonald's* holding, however, turns on the erroneous proposition that a § 727(a) plaintiff must prove its case by clear and convincing evidence. *See id.* at 334–35. *See also supra* note 7. Moreover, *In re MacDonald's* conclusion that the debtor would be entitled to

his discharge upon "transfer to the trustee" of beneficial stock interests previously concealed is directly contrary to this circuit's recent holding in *In re Bajgar*, 104 F.3d 495, discussed *infra*. Other cases relied upon by the court below are either distinguishable, *see Peoples Bank, Inc. v. Herron (In re Herron)*, 49 B.R. 32 (Bankr.W.D.Ky. 1985) (debtors accused not of concealing assets within one year of bankruptcy, but, rather, of concealing a transfer that had occurred outside the one year period), or unconvincing. *See Bartlett Bank & Trust Co. v. Wolmer (In re Wolmer)*, 57 B.R. 128 (Bankr.N.D.Ill.1986) (similar facts to the case at bar, but court focused on whether or not debtors concealed a transfer, rather than retained and concealed an interest).

relevant facts and necessary evidence are clearly before us and not in dispute." *In re El San Juan Hotel,* 809 F.2d 151, 154 n. 3 (1st Cir.1987). *See also Pignato v. Dein Host, Inc. (In re Dein Host, Inc.),* 835 F.2d 402, 405 (1st Cir.1987).

The bankruptcy court did find that the debtors transferred property and secretly held back a beneficial interest with the "actual intent" to hinder, delay, or defraud their creditors. That they maintained their wrongful intent within the § 727(a)(2)(A) one year period is beyond cavil. They continued to deny their interest in state court well into 1995 and throughout the adversary proceeding. While denying DEPCO its value, they exploited that value to secure the continuing services of an attorney whose objective was to thwart DEPCO's collection efforts.

Determining that the record before us establishes clearly the Hayeses' fraudulent intent within the year preceding bankruptcy gives us no pause whatsoever. *See In re Gollomp,* 198 B.R. at 440 (insignia of fraudulent intent include (1) inadequate consideration, (2) insider relationships between the parties, (3) retention of a benefit from transferred property, (4) a calculated change in financial condition worked by the transaction, (5) the end result of a series of transactions following the incurring of debt or a downturn in financial well-being, and (6) conclusions flowing from the overall chronology of events and transactions); *accord Tastee Donuts, Inc.,* 169 B.R. at 591.[12]

### Conclusion

The debtors' fraudulent concealment of their interest in 21 Wamesit during the year preceding their bankruptcy filing mandates that their discharge be denied under § 727(a)(2)(A). The judgment of the bankruptcy court must be, and hereby is, REVERSED.

---

**12.** The record is replete with historical examples of conduct providing circumstantial evidence of the Hayeses' long-lived scheme to conceal valuable assets from their creditors: the January 1991 sham lease of their residence; representations of outright ownership in their Pioneer loan application one month later; and their 1993 and 1995 financial statements representing they held no interest in 21 Wamesit.